## SAN ANTONIO METROPOLITAN TRANSIT AUTHORITY, Plaintiff–Appellee,

v.

## Ann McLAUGHLIN, Secretary of Labor of the United States, Defendant,

### Joe G. Garcia, Intervenor–Defendant, Appellant.

### No. 88–5550.

United States Court of Appeals, Fifth Circuit.

June 29, 1989.

J. Peter Dowd, Kalman D. Resnick, Chicago, Ill., Les Mendelsohn, San Antonio, Tex., Charles Orlove, Chicago, Ill., for intervenor-defendant-appellant.

George P. Parker, Jr., Judy K. Lytle, Charles J. Fitzpatrick, San Antonio, Tex., for plaintiff-appellee.

Before GARZA, JOLLY and JONES, Circuit Judges.

**E. GRADY JOLLY, Circuit Judge:**

In this case we consider whether an employee who sued his employer for overtime pay pursuant to section 16(b) of the Fair Labor Standards Act is entitled to an award of attorney's fees and costs after obtaining a judgment against the employer, where the employee has litigated as a defendant-intervenor in a declaratory judgment action filed by the employer against the Secretary of Labor. We find that he is not, and affirm.

I

The background to this case is lengthy, but necessary. In 1976, the Supreme Court ruled that the 1974 amendments to the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA") could not be applied constitutionally to traditional governmental functions where the Act would "operate to directly displace the States' freedom to structure integral operations." *National League of Cities v. Usery*, 426 U.S. 833, 852, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976). The Court specifically identified as traditional governmental functions "fire prevention, police protection, sanitation, public health, and parks and recreation," and left open the question of what other functions might fall within this category. *Id.*, 426 U.S. at 851, 856, 96 S.Ct. at 2474, 2476.

In October 1976, the San Antonio Transit System, predecessor to the San Antonio Metropolitan Transit Authority ("SAMTA"), decided to discontinue compliance with the FLSA's overtime provisions. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 533–34, 105 S.Ct. 1005, 1008, 83 L.Ed.2d 1016 (1985). On September 17, 1979, the Department of Labor published an opinion letter and regulation to the effect that providing local mass transit systems is not a traditional government function; therefore, according to the position of the Department of Labor, *National League* would not exempt SAMTA from complying with the FLSA.

Soon after, Joe Garcia and other SAMTA employees announced plans to file suit against SAMTA for failing to comply with FLSA's overtime provisions, and circulated a memorandum and consent-to-sue forms to SAMTA employees. On November 21, 1979, SAMTA filed a declaratory judgment action against the Secretary of Labor, seeking a judgment that SAMTA's operations were constitutionally immune from the FLSA under *National League of Cities*. Later that same day, SAMTA employees filed their suit against SAMTA for back wages and other relief under the FLSA. SAMTA raised as its principal defense to the employees' lawsuit the same constitutional issue it raised in its declaratory action.

On December 11, 1979, SAMTA filed a motion to stay the employee's suit while SAMTA's action against the Secretary of Labor was litigated on the constitutional question. In May 1980, the district court granted the stay. It cited, among other reasons, its desire to "avoid duplicative efforts and costs on the part of the Plaintiff."

On February 8, 1980, the Secretary of Labor filed his answer in the declaratory judgment action, and counterclaimed under section 17 of the FLSA against SAMTA for injunctive relief against violation of the FLSA, including the continued withholding of any back overtime pay owed to SAMTA employees since February 4, 1978.

On April 11, 1980, Garcia moved on behalf of the employees to intervene pursuant to Fed.R.Civ.P. 24, and on July 13, 1981, the court permitted Garcia to intervene as a "party defendant," and Garcia became a defendant in the declaratory judgment action brought by SAMTA against the Secretary of Labor. Garcia did not intervene as a party to the Secretary's counterclaim.

On November 17, 1981, the district court held that SAMTA's operations were immune under *National League* and granted SAMTA summary judgment. On direct appeal, the Supreme Court vacated the judgment and remanded for further consideration in the light of its intervening decision in *United Transportation Union v. Long*

*Island R.R. Co.,* 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982). *Donovan v. San Antonio Metropolitan Transit Authority,* 457 U.S. 1102, 102 S.Ct. 2897, 73 L.Ed.2d 1309 (1982).

On February 18, 1983, the district court reentered summary judgment in favor of SAMTA. *San Antonio Metropolitan Transit Authority v. Donovan,* 557 F.Supp. 445 (W.D.Tex.1983). The Secretary of Labor and Garcia both appealed directly to the Supreme Court. After hearing argument on the appeal from the district court's second decision, the Supreme Court set the case for reargument. In addition to the questions presented in the petition for writ of certiorari and previously briefed and argued, the Court requested that the parties also brief and argue the question "Whether or not the principles of the Tenth Amendment as set forth in *National League* ... should be reconsidered." *Garcia v. San Antonio Metropolitan Transit Authority,* 468 U.S. 1213, 104 S.Ct. 3582, 82 L.Ed.2d 880 (1984); *Donovan v. San Antonio Metropolitan Transit Authority,* 468 U.S. 1213, 104 S.Ct. 3582–83, 82 L.Ed.2d 880 (1984).

On February 19, 1985, the Supreme Court issued its opinion, expressly overruling *National League* and holding that the FLSA can be constitutionally applied to all state and local government employees, including those of SAMTA, without violating the tenth amendment. *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (*"Garcia"*). The Supreme Court decided only the constitutional issue and determined only that state and local government employers, such as SAMTA, can no longer rely on the tenth amendment as shielding them from the FLSA. The Court did not hold SAMTA liable to Garcia or any other employee, or hold that SAMTA had even violated the FLSA because questions of liability were not before the Court. Since the date of the Supreme Court's decision, SAMTA has been in full compliance with the FLSA.

After the Supreme Court decision, the only issues left in SAMTA's suit against the Secretary were those raised by the Secretary's counterclaim, under section 17 of the FLSA for injunctive relief, including relief against SAMTA's continued withholding of any back overtime pay owed SAMTA employees since February 4, 1978. On May 8, 1985, SAMTA moved for summary judgment the Secretary's counterclaim on the ground that the Supreme Court's decision could not be applied retroactively. On June 14, 1985, the Department of Labor issued its formal "Policy" for implementing the Supreme Court's decision, which stated that the federal government would not seek back wages from state and local governments for periods of employment predating April 15, 1985, the date the Supreme Court denied SAMTA's petition for rehearing. The Department of Labor Policy further stated that the course of action to be taken in cases then in litigation would be determined on a case-by-case basis.

Consistent with the above policy, and because under section 16(b) of the FLSA the Secretary's filing of her counterclaim extinguishes the right of employees to file their own section 16(b) suits, *see* 29 U.S.C. § 216(b), counsel for SAMTA and the Secretary initiated discussions designed to dismiss the Secretary as a party to the lawsuit. Counsel for Garcia also participated in these discussions. On October 16, 1985, the parties reached an agreement on the terms of a Judgment and Stipulation of Dismissal. The judgment provided that SAMTA's complaint would be dismissed and the judgment entered in favor of the Secretary and Garcia would be with prejudice solely as to the constitutional issue decided by the Supreme Court. The Secretary's counterclaim for FLSA enforcement would be dismissed without prejudice, with certain procedures established to allow those of SAMTA's employees who had not filed consents-to-sue in Garcia's section 16(b) case prior to the filing of the Secretary's counterclaim, to file such consents for the purpose of pursuing, if they so desired, their claims for retroactive back pay. SAMTA agreed to waive any statute of limitations defenses to such claims. On

October 18, 1985, the court entered the stipulation and signed the judgment.

Following the district court's entry of the agreed judgment for SAMTA in its declaratory judgment action against the Department of Labor, SAMTA promptly filed a motion for summary judgment in Garcia's section 16(b) suit against SAMTA for backpay, on the ground that the Supreme Court's decision overruling *National League* could not be applied retroactively. On February 24, 1987, the district court granted summary judgment in favor of SAMTA on the retroactivity issue and dismissed the section 16(b) suit. Present and former bus-operator plaintiffs in that case appealed that dismissal. This circuit affirmed the district court's judgment in SAMTA's favor, *Garcia v. San Antonio Metropolitan Transit Authority*, 838 F.2d 1411 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 221, 102 L.Ed.2d 212 1988).

On October 28, 1985, after the district court had entered judgment in SAMTA's case against the Secretary, Garcia filed a Motion for Partial Summary Judgment on Liability of SAMTA for Attorney's Fees and Costs. On March 25, 1988, the district court entered an order denying Garcia's motion. 684 F.Supp. 158. It held first that attorney's fees were not awardable to Garcia under section 16(b) of the FLSA because the declaratory action was "a direct attack by Plaintiff [SAMTA] on the FLSA under the Tenth Amendment" and as a result, the case arose not under the FLSA but under Constitution, making the provision in section 16(b) for attorney's fees inapplicable. Alternatively, the court held that even if section 16(b) were applicable, Garcia could not be awarded attorney's fees because section 16(b) limits such awards to plaintiffs, and Garcia was postured as a defendant in the action. The court further held that Garcia was not entitled to attorney's fees because he had not succeeded in winning a monetary recovery from SAMTA under the FLSA.

## II

On appeal, Garcia argues that section 16(b) of the FLSA must be construed to mandate the award of attorneys' fees and costs to him for his role in obtaining judgment in SAMTA's declaratory judgment litigation. He claims that because of the identity of the issues in the two cases filed in district court, the court decided to litigate the merits of SAMTA's defense in a single proceeding, and Garcia was permitted to intervene in that case to protect the interests of employees in both cases. Because his intervention in the declaratory judgment action was for the express purpose of resolving the merits of the tenth amendment defense, which would be dispositive of the SAMTA employees' suit if SAMTA were to prevail, Garcia's posture as a defendant-intervenor in that case should not operate to preclude an award of attorney's fees under section 16(b). Even though the plain language of the FLSA allows for the award of reasonable attorney's fees and costs only to a successful section 16(b) plaintiff, the statutory purpose of section 16(b) is to encourage employees to assert their rights against an employer who frustrates the purpose of the FLSA, Garcia argues, and construing the language of section 16(b) narrowly in this case will thwart that purpose.

We are compelled to disagree.

We look first at the language of section 16(b) itself. That section provides in pertinent part as follows:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.... An action to recover [such] liability ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment

awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or 207 of the title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.

29 U.S.C. § 216(b).

Section 16(b) authorizes employees to sue their employers for redress of overtime violations, and mandates the award of attorneys' fees and costs to successful employee litigants. However, section 16(b) also expressly states that the right of an employee to bring an action against his employer terminates upon the filing of a complaint by the Secretary under section 17. Section 17 authorizes the Secretary to bring injunctive actions to restrain any withholding of payment of minimum wages or overtime compensation due to employees. Section 16(c) of the FLSA, which authorizes the Secretary to sue directly to recover unpaid minimum wages or overtime compensation owed to any employee, also provides that the right of an employee to bring an action against his employer under section 16(b) terminates upon the filing of a complaint by the Secretary under that section. Courts considering whether private intervention is barred in suits brought under those sections by the Secretary of Labor have held that the Act's terms preclude such intervention. *See Donovan v. University of Texas*, 643 F.2d 1201, 1208 (5th Cir.1981) (section 17); *Marshall v. United States Postal Service*, 481 F.Supp. 179, 180 (D.C.D.C.1979) (section 16(c)).

Though the Secretary did not bring a claim under the FLSA, but rather was a defendant in SAMTA's declaratory judgment action, and though the Secretary's section 17 counterclaim was filed after the employees' section 16(b) suit, the district court's stay of the section 16(b) suit was completely consistent with the framework of the FLSA, which allows suits involving the Secretary to take precedence over employee actions involving the same employer. The court noted that it stayed Garcia's section 16(b) action in part in order to "avoid duplicative efforts and costs on the part of the Plaintiff."

Garcia's intervention in SAMTA's declaratory judgment action against the Secretary was necessarily purely voluntary. Garcia had no duty to intervene and the Secretary was perfectly capable of litigating the merits of the constitutional issue. The legislative intent behind the attorney's-fee provision of section 16(b) is plainly to recompense wronged employees for the expenses incurred in redressing violations of the FLSA and obtaining wrongfully withheld back pay. When Garcia intervened in the declaratory judgment action, however, it was made clear that he intervened for the sole purpose of addressing the tenth amendment issue. Garcia disclaimed any interest in the Secretary's section 17 counterclaims. In fact, Garcia was statutorily barred from intervening in the Secretary's counterclaim, seeking injunctive relief against SAMTA's continued withholding of back overtime pay, though it was the portion of the declaratory judgment action most directly related to the employees' section 16(b) suit. Intervention by party plaintiffs is not allowed in section 17 cases. *Donovan v. University of Texas*, 643 F.2d 1201, 1208 (5th Cir.1981). The Secretary is the sole party authorized to seek an injunction against withholding back pay, because "a § 17 suit is brought primarily in the public interest despite the fact that employees may be the ultimate beneficiaries of the actions." *Id.* "[T]he purpose of an injunction under § 17 is 'not to collect a debt but rather to redress a wrong being done to the public good.'" *Id.* "[I]n no sense is the

Government a mere representative of private interests where it brings suit under § 17." *Id.* at 1206.

Garcia has pointed to no statute that authorizes attorney's fees for a prevailing defendant-intervenor in a declaratory judgment action brought against the Secretary of Labor. The section 16(b) provision for attorneys fees Garcia relies on, by its language, applies only to private actions brought by employees against their employers for wrongfully withheld back pay. Insofar as the declaratory judgment action is concerned, the general rule is that without a specific congressional provision, a litigant may not recover attorney's fees. *See Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542–43 (11th Cir.1985) (holding that the American Rule applies to claims by prevailing defendants for attorney's fees in FLSA actions). In *Alyeska Pipeline Service Co. v. The Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court reaffirmed the American Rule whereby, "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Id.* at 257, 95 S.Ct. at 1621. The Court stated that:

> What Congress has done, however, while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorney's fees under selected statutes granting or protecting various federal rights.... Under this scheme of things, it is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine.
>
> . . . .
>
> [Federal] courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the importance of the public policies involved in particular cases.

421 U.S. at 260–62, 269, 95 S.Ct. at 1623–24, 1627. Although Garcia's participation in the declaratory judgment action brought by SAMTA may have been instrumental in obtaining the overruling of *National Cities*, he has shown us no "specific and explicit provision[ ] for the allowance of attorney's fees" warranting departure from the American Rule in his case.

### III

For the above reasons, the district court's denial of Garcia's Motion for Partial Summary Judgment on Liability of SAMTA for Attorney's Fees is

AFFIRMED.

GARZA, Circuit Judge, dissenting:

The majority concludes that, despite his success in obtaining a judgment against SAMTA which resulted in the recovery of a substantial back overtime pay award for himself and his fellow employees under § 216(b) of the FLSA, appellant Garcia may not recover his reasonable attorneys' fees. Because I find that both the equities as well as the law in this case compel us to grant Garcia an award of attorneys' fees and costs, I must respectfully dissent.

There can be no question that the procedural posture of this case is both complex and unique in FLSA litigation. The majority apparently finds this complexity and singularity prohibitive of a holding that would award Garcia his attorneys' fees without doing violence to the statutory language of § 216(b). The majority states that "Garcia has pointed to no statute that authorizes attorney's fees for a prevailing defendant-intervenor in a declaratory judgment action against the Secretary of Labor." This observation takes a view of § 216(b) that is both unnecessarily restrictive and unwarranted in light of prior cases. It also misses the broader and more important implications of the case before us.

The attorneys' fees provision of § 216(b) obviously contemplates that, in virtually all cases, employees who allege a violation of the FLSA will be aligned as plaintiffs and employers will participate as defendants. The explicit denial of attorneys' fees to

"defendants" was meant, ostensibly, to preclude recovery of fees by employers from employees; the provision is a one-way street. It is clear, however, that a federal court may award attorneys' fees to an employee who has litigated his FLSA claim in the posture of a defendant. In *St. John v. Brown*, 38 F.Supp. 385 (N.D.Tx.1941), an employer filed an action seeking a declaratory judgment that its employees were not entitled to the protection of the FLSA. Notwithstanding that the employees were aligned as defendants in the case, the district court for the Northern District of Texas, after entering judgment against the employer, allowed recovery by the employees of their reasonable attorneys' fees. *St. John,* 38 F.Supp. at 390.

On October 18, 1985, in accordance with the parties' Stipulation of Dismissal filed on that date, the court entered judgment in favor of Garcia. Pursuant to that Stipulation, the parties agreed to the dismissal of SAMTA's declaratory judgment claim as well as the counterclaim by the Secretary of Labor. They further agreed that the previous filing of the Secretary's counterclaim would not bar any existing or future consents to sue filed in Garcia's FLSA action. Significantly, paragraph 6 of the Stipulation of Dismissal provides that nothing in the agreement "is intended to resolve or foreclose any claims or defenses involving attorneys' fees and costs which may be claimed by SAMTA employees against SAMTA related to litigation of the constitutional issue." *San Antonio Metropolitan Transit Authority v. Garcia*, Civ. Action No. SA–79–CA–457 (W.D.Tex., filed Oct. 18, 1985) (Stipulation of Dismissal).

There can be no question that appellant Garcia was successful in an action to recover the liability of SAMTA to its employees for unpaid overtime compensation. The majority denies him an award of attorneys' fees simply because one of the issues in his § 216(b) case was, for reasons of judicial economy, determined in a related separate cause of action—a cause of action in which he participated and, eventually, prevailed.

Prior to the judgment of October 18, 1985, the filing of a counterclaim by the Secretary of Labor in SAMTA's declaratory judgment action precluded Garcia from going forward with his section 216(b) claim. Had the court stayed SAMTA's declaratory judgment action and allowed litigation on the identical constitutional issue to proceed in Garcia's section 216(b) case, Garcia would clearly have been entitled to attorneys' fees. From this perspective, SAMTA's case can be viewed as a separate suit, the purpose of which was to do nothing more than determine the threshold constitutional issue presented in Garcia's own section 216(b) action. It seems anomalous to me, therefore, to allow recovery of attorneys' fees when the constitutional issue is litigated in one case, but to deny them when, for purposes of judicial economy, the same issue is litigated in a related suit, notwithstanding that the ultimate result (i.e., recovery of overtime backpay by Garcia and his co-employees due to SAMTA's violations of the FLSA) would be precisely the same under both circumstances.

Additionally, I find compelling the fact, mentioned only tangentially by the majority, that Garcia was the *only* party to argue that *National League of Cities* should be overruled, the position ultimately adopted as the central holding in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Thus, Garcia's participation in the declaratory judgment action brought by SAMTA was much more than, in the words of the majority, merely "instrumental in obtaining the overruling of *National League of Cities.*" Rather, his efforts were indispensible and, indeed, decisive. It is a mistake to allow our focus upon the procedural complexity of this case to obscure our awareness that appellant here has vindicated the very rights that § 216(b) was crafted to protect.

Garcia originally filed a section 216(b) action to recover unpaid overtime compensation. That action was stayed so that the threshold, and determinative, tenth amendment issue could be litigated in one forum. The presentation of Garcia's winning argument before the Supreme Court was essential to his ultimate victory in the section 216(b) action. Under the unique procedural

circumstances of this case, in my view, the declaratory judgment action was part and parcel of Garcia's section 216(b) lawsuit inasmuch as Garcia was the only party before the Supreme Court to present the argument that ultimately resulted in the payment of $109,000 in back overtime pay to SAMTA's employees. Garcia's actions in this case were, at all times, consistent with behavior that the attorneys' fees provision of section 216(b) was designed to encourage. For these reasons, an award of attorneys' fees to Garcia best comports with the intentions of Congress and the purposes of section 216(b).