Malee BUREERONG, et al., Plaintiffs,

v.

Tavee UVAWAS, et al., Defendants.

No. CV95–5958 ABC (BQRx).

United States District Court,
C.D. California.

March 21, 1996.

Stewart Kwoh, Julie A. Su, Asian Pacific American Legal Center, Los Angeles, CA, Della Bahan, Glenn Rothner, Anthony · R. Segall, Rothner, Segall, Bahan & Greenstone, Pasadena, CA, Dan Stormer, Hadsell & Stormer, Inc., Pasadena, CA, Lora Jo Foo, Laura Ho, Asian Law Caucus, San Francisco, CA, Lucas Guttentag, ACLU Immigrants Rights Project, San Francisco, CA, Mark Rosenbaum, ACLU Foundation of Southern California, Los Angeles, CA, for Plaintiffs.

Ronald C. Peterson, Caroline L. DeWitt, Heller, Ehrman, White & McAuliffe, Los Angeles, CA, for Defendant Mervyn's.

Scott W. Wellman, Wellman & Warren, Irvine, CA, for Defendant Tomato, Inc.

Robert Ezra, Ezra and Brutzkus, Encino, CA, for Defendant Bigin, Inc. d/b/a The Italian Club.

Steve K. Wasserman, Howard S. Blum, John P. Doyle, Wasserman, Comden & Cassleman L.L.P., Tarzana, CA, for Defendant L.F. Sportswear.

Richard L. Mann, Cynthia E. Fruchtman, Kyle P. Kelley, Richman, Lawrence, Mann, Greene & Chizever, Beverly Hills, CA, for Defendant B.U.M. International, Inc.

ORDER RE: 1.) DEFENDANTS'
MOTION FOR MORE DEFINITE
STATEMENT;

2.) DEFENDANTS' MOTIONS
TO DISMISS;

3.) DEFENDANTS' MOTION
TO STRIKE;

4.) DEFENDANT MERVYN'S MOTION
FOR SUMMARY JUDGMENT

COLLINS, District Judge.

Defendants' motions came on regularly for hearing before this Court on March 18, 1996.

After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED as follows:

1.) Defendants' motion for a more definite statement is DENIED;

2.) Defendants' motions to dismiss are GRANTED in part and DENIED in part. Plaintiffs' fourth and fifth causes of action are hereby DISMISSED with prejudice;

3.) Defendants' motion to strike is GRANTED in part and DENIED in part. The Court ORDERS the term "Slave Sweatshop" stricken from the First Amended Complaint; and

4.) Defendant Mervyn's' motion for summary judgment is DENIED without prejudice to a future motion.

## I. Background

This action is one of several civil and criminal proceedings [1] stemming from allegations that the Plaintiffs, who are immigrant garment workers from Thailand, were falsely imprisoned in a complex in El Monte, California, and employed in a system of involuntary servitude. The substance of Plaintiffs' allegations will be addressed in further detail below. On September 5, 1995, Plaintiffs filed a Complaint against Defendants TAVEE UVAWAS, SUNEE MANASULANGKOON, SUPORN VERAYTWILAI, THANES PANTHONG, PRAWIT PHAPHARASUJSERM, SANCHAI PONGPRAPIN, NUTTAPHAN KETWATTHA, MALINEE CHINWALANA, RAMPA SUTHAPRASIT, SUNTON RAWUNGCHAISUNG, and SEREE GRANJAPIREE, all individually, and doing business as SK FASHIONS, S & P FASHIONS, and D & R FASHIONS, for peonage and involuntary servitude, various labor violations, violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), violation of 42 U.S.C. § 1985(3), fraud, misrepresentation, intentional infliction of emotional distress, assault, and false imprisonment. Plaintiffs have termed these Defendants the "operators," because they were the individuals or entities who allegedly operated the El Monte facility where the Plaintiffs were held and employed.[2]

On October 25, 1995, Plaintiffs filed a First Amended Complaint ("FAC"), adding as Defendants MERVYN'S, TOMATO, INC. ("Tomato"), L.F. SPORTSWEAR, MS. TOPS OF CALIFORNIA, INC. ("Ms. Tops"), TOPSON DOWNS OF CALIFORNIA, INC., F–40 CALIFORNIA, INC. ("F–40"), NEW BOYS, INC. ("New Boys"), BIGIN, INC. ("Bigin"), ITALIAN CLUB, and B.U.M. INTERNATIONAL, INC ("B.U.M."). These Defendants added by the FAC were not directly involved in operating the El Monte facility. Plaintiffs distinguish this set of Defendants by terming them "manufacturer"

---

1. There are also three other related civil and criminal proceedings: (1) *United States v. Manasurangkun*, Case No. CR 95–714(A) ABC (the federal criminal case); (2) *Robert B. Reich, Secretary of Labor, United States Department of Labor v. Tavee Uvawas, individually and doing business as SK Fashions, et al.*, Case No. CV 95–5474 WKD (JRx) and (3) *Victoria Bradshaw, Labor Commissioner, State of California v. Tavee Uvawas individually and dba SK Fashions, et al.*, Los Angeles Superior Court Case No. BC 133180.

2. As to several of these "operator" Defendants, many of these allegations have been *conclusively* established. In *United States v. Manasurangkun*, CR 95–714(A) ABC, the Government brought criminal charges against Defendants Suni Manasurangkun (named by Plaintiffs as "Sunee Manaslangkoon"), Wirichai Manasurangkun (named by Plaintiffs as "Prawit Phapharsujserm"), Surachai Manasurangkun (named by Plaintiffs as "Tavee Uvawas"), Phanasak Manasurangkun (named by Plaintiffs as "Thanes Panthong"), Sanchai Manasurangkun (named by Plaintiffs as "Sanchai Pongprapin"), Chavalit Manasurangkun, Sunthon Rawangchaisong (named by Plain-

tiffs), Seri Kanchakphairi (named by Plaintiffs as "Seree Granjapiree"), Rampha Satthaprasit (named by Plaintiffs), and Suporn Verayutwilai (named by Plaintiffs). *See* First Superseding Indictment (filed Nov. 9, 1995). On January 31, 1996, Defendant Suporn Verayutwilai pled guilty to conspiracy to commit several criminal violations, some of which are identical to Plaintiffs' allegations in this case. On February 9, 1996, Defendants Suni Manasurangkun, Wirichai Manasurangkun, Surachai Manasurangkun, Phanasak Manasurangkun, Sunthon Rawangchaisong, Seri Kanchakphairi, and Rampha Satthaprasit also pled guilty to similar charges. The "operator" Defendants named by Plaintiffs but not involved in the criminal case are Nuttaphan Ketwattha and Malinee Chinwalana. In addition, Defendant Sanchai Manasurangkun (named in both this case and the criminal action) did not plead guilty to any crimes. Therefore, as to Defendants Nuttaphan Ketwattha, Malinee Chinwalana, and Sanchai Manasurangkun, no allegations have been conclusively established.

Defendants. In the First Amended Complaint, Plaintiffs assert that these Defendants have: (1) failed to pay Plaintiffs a minimum wage or overtime, in violation of the federal Fair Labor Standards Act ("FSLA") (29 U.S.C. §§ 206, 207 & 216(b)) and Cal.Labor Code §§ 1194(a), 1194.2(a), 1197 & 2665(a); (2) employed Plaintiffs to manufacture garments by industrial homework, in violation of 29 U.S.C. §§ 211(d) & 215(a)(5), 29 C.F.R. § 530.2, and the California Industrial Homework Act (Cal.Labor Code §§ 2650 *et seq.*); (3) contracted with entities not registered with the state Labor Commissioner, in violation of Cal.Labor Code §§ 2675 & 2677 and Cal.Reg.Code § 13634; (4) engaged in unfair business practices, in violation of Cal.Bus. & Prof. Code §§ 17200 *et seq.*; (5) involuntarily deducted wages for transportation board, and outstanding debt, in violation of Cal.Labor Code § 450 and FLSA § 3(m); (6) committed negligence per se; (6) committed negligent supervision; and (7) committed negligent hiring. Plaintiffs seek injunctive relief, declaratory relief, unpaid minimum wages, unpaid overtime premiums, restitution, liquidated damages, general damages, treble damages, interest, punitive damages, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

On December 6, 1995, Defendants Ms. Tops, Topson Downs, and F-40 (collectively "Ms. Tops") filed motions to dismiss, for a more definite statement, and to strike portions of Plaintiffs' First Amended Complaint. Soon thereafter, on December 18, 1995, Defendant Mervyn's joined in the Ms. Tops motions. On January 16, 1996, Defendant B.U.M. joined in the Ms. Tops motions, and Defendants Tomato, Bigin, and L.F. Sportswear filed their own motion to dismiss ("Tomato motion").[3] Defendant Mervyn's filed its own motion to dismiss as well as a motion for summary judgment on the same date. Also on January 16, 1996, Plaintiffs dismissed Defendants F-40, Topson Downs, and Ms. Tops from the action. On January 26, 1996, Defendants Tomato, Bigin, and L.F. Sportswear joined in the Ms. Tops[4] and Mervyn's motions to dismiss. Finally, on February 21, 1996, Mervyn's joined in the Tomato, Bigin, and L.F. Sportswear motion to dismiss.

On March 5, 1996, Plaintiffs filed one consolidated Opposition to all of Defendants' motions to dismiss. In addition, Plaintiffs filed Oppositions to Defendants' motions for a more definite statement and to strike. Finally, Plaintiffs filed a Request that Mervyn's' summary judgment motion be denied or continued pursuant to Fed.R.Civ.P. 56(f). Defendants Mervyn's and B.U.M. filed Reply briefs on March 11, 1996, in which Defendants Tomato, Bigin, and L.F. Sportswear joined.

## II. Plaintiffs' Allegations

As stated above, Plaintiffs are immigrants from Thailand who were employed as garment workers, allegedly in conditions amounting to involuntary servitude. FAC ¶ 5. According to the First Amended Complaint, Plaintiffs were forced to sew garments inside a facility at 2614 Santa Anita Avenue, El Monte, California ("El Monte facility"). FAC ¶ 10. Beginning in 1988 and continuing through August 2, 1995, the "operator" Defendants, doing business as SK Fashions, S & P Fashions, and D & R Fashions directly operated this facility and allegedly imprisoned and enslaved Plaintiffs, forcing them to work up to eighteen hours a day or more. FAC ¶ 11. In addition, the operators allegedly censored Plaintiffs' mail, deprived them of contact with the outside world, subjected Plaintiffs to mental, physical, and economic coercion and cruelty, and restrained Plaintiffs through the use of threats of physical force against the Plaintiffs or their families. FAC ¶ 12. According to the First Amended Complaint, Plaintiffs were either not paid at all for their work or were paid below the minimum wage and were not compensated for overtime. FAC ¶ 16. Payments for transportation were allegedly deducted from Plaintiffs' wages. FAC ¶ 16. In addition, food and other necessities were allegedly available to Plaintiffs only at grossly inflated

---

3. On January 16, 1996, B.U.M. joined in the Tomato motion.

4. Because of Mervyn's' and B.U.M.'s joinder, the substance of the Ms. Tops motions survived, even though the Ms. Tops Defendants were dismissed from the action.

prices. FAC ¶ 16. According to the First Amended Complaint, Plaintiffs were also forced to live, sleep, and eat at the El Monte facility, where they also worked. FAC ¶ 10. Plaintiffs allege that the El Monte facility was Plaintiffs' "home" within the meaning of the California Industrial Homework Act (Cal.Labor Code § 2650(c)). FAC ¶ 10.

Allegedly, the individual operators and Defendants SK Fashions, S & P Fashions, and D & R Fashions at all times operated a joint integrated business operation out of the El Monte facility and at 1330 W. 11th Place, 1314 W. 12th Place, and 1319 W. 12th Place in Los Angeles ("Los Angeles facilities"). FAC ¶ 17. As such, the individuals, SK Fashions, S & P Fashions, and D & R Fashions allegedly constituted an "enterprise," as defined by 29 U.S.C. § 203(r), and a single employer which employed Plaintiffs as industrial homeworkers. FAC ¶ 17. The specific allegations against the operator Defendants are not directly at issue in these motions.

Defendants Tomato, L.F. Sportswear, Bigin, Ms. Tops, Topson Downs, F–40,[5] New Boys,[6] Mervyn's and B.U.M. are all corporations engaged in the garment business. As stated above, Plaintiffs term these Defendants "manufacturers."[7] Plaintiffs allege that, together with the "operators," these "manufacturer" Defendants acted as Plaintiffs' joint employers "because each exercised meaningful control over the work plaintiffs performed." FAC ¶ 19. Plaintiffs contend that the operators of the El Monte and Los Angeles facilities were an integral part of the "manufacturers'" business, and that the operators "acted, in effect, as supervisors and managers" for the "manufacturer" Defendants. FAC ¶ 19. In addition, Plaintiffs assert that the "manufacturer" Defendants have directly or indirectly employed Plaintiffs as industrial homeworkers within the meaning of Cal.Labor Code § 2650 et seq. and 29 C.F.R. § 530.2. FAC ¶ 20.

According to the First Amended Complaint, Defendants Tomato, Bigin, L.F. Sportswear, and F–40 were not registered with the California Labor Commissioner, in violation of Cal.Labor Code § 2675 et seq. FAC ¶ 21. In addition, Plaintiffs allege that any registration issued to SK Fashions, S & P Fashions, D & R Fashions, or to any of the individual operators by the Labor Commissioner was procured by fraud and is null and void. FAC ¶ 22. Therefore, Plaintiffs allege that the "manufacturers'" garments were produced at unregistered garment factory locations. FAC ¶ 23.

Plaintiffs further allege that the "manufacturers" contracted with the operators "to produce garments at prices too low to permit payment of employees' minimum wages and overtime." FAC ¶ 26. Plaintiffs assert that the "manufacturers" "utilize the business practice of contracting out garment manufacturing work in part to avoid compliance with labor laws and liability for violation of those laws." FAC ¶ 26. Furthermore, Plaintiffs allege that the "[m]anufacturers engaged and continue to engage in a pattern and practice of contracting at unfairly low prices by utiliz-

---

5. Because Plaintiffs have dismissed Ms. Tops, Topson Downs, and F–40, they are no longer a part of this action.

6. Pursuant to a stipulation (dated February 13, 1996), Defendant New Boys has not yet filed any response to Plaintiffs' First Amended Complaint.

7. Some of the Defendants dispute this characterization. Mervyn's asserts that it is a clothing retailer that does not manufacture clothing. See Mervyn's' Motion to Dismiss at 3. Tomato, Begin, and L.F. Sportswear assert that they are designers, importers, and distributors of sportswear. Tomato's Motion at 2. They claim that they themselves "do not perform sewing, cutting, dying or assembly functions in connection with producing their garment product. Rather, [the] contract with various independent contractors that provide such services." Id. Accordingly, they refer to themselves as "customers," rather than "manufacturers." Similarly, the Ms. Tops Defendants assert that they "are in the business of designing, marketing, and distributing their apparel lines. They do not have sewing facilities and do not perform any sewing work." Ms. Tops' Motion to Dismiss at 5. Accordingly, the Ms. Tops Defendants refer to themselves as "customers," not "manufacturers." Because the substance of Defendants' assertions goes beyond the face of Plaintiffs' First Amended Complaint, and is not particularly relevant, the Court need not resolve this semantic difference at this time. For ease in communication, the Court will utilize Plaintiffs' characterization in recounting the Plaintiffs' allegations. However, no inference should be drawn from the Court's use of the term "manufacturer" during its description of Plaintiffs' allegations.

ing garment contractors who are not registered and/or who are chronic violators of labor laws, thus condemning plaintiffs and other garment workers to long hours of work without minimum wages and overtime pay as required by law, to the detriment of themselves, their families and to the public at large." FAC ¶ 27. Plaintiffs contend that the "manufacturers" have "concealed and continue to conceal pertinent facts regarding their activities," and are unjustly enriched by the unlawful acts of the operators.

Plaintiffs assert the following causes of action against the "manufacturer" Defendants. First, Plaintiffs allege that Defendants have failed to pay minimum wage and overtime, in violation of 29 U.S.C. §§ 206, 207 & 216(b). FAC ¶¶ 37–39 (Second Claim For Relief). Second, Plaintiffs allege that Defendants have failed to pay minimum wage and overtime, in violation of Cal.Labor Code §§ 1194(a), 1194.2(a), 1198, & 2665(a) and the Industrial Welfare Commission ("IWC") Wage Order No. 1–89, § 3. FAC ¶ 40–44 (Third Claim For Relief). Third, Plaintiffs allege that Defendants have violated 29 U.S.C. § 211(d) & 215(a)(5), 29 C.F.R. § 530.2, and Cal.Labor Code ¶ 2650 *et seq.* by employing Plaintiffs as industrial homeworkers in the manufacture of garments. FAC ¶¶ 45–48 (Fourth Claim For Relief). Fourth, Plaintiffs allege that Defendants have contracted with an unregistered garment manufacturer, in violation of Cal.Labor Code § 2675 & Cal.Reg.Code § 13634. In addition, Plaintiffs allege that Defendants Bigin, F–40, New Boys, and Tomato have illegally not registered with the Labor Commissioner as garment manufacturers. FAC ¶¶ 49–53 (Fifth Claim For Relief). Fifth, Plaintiffs allege that Defendants have engaged in unfair business practices, in violation of Cal. Bus. & Prof.Code §§ 17200 *et seq.* FAC ¶¶ 74–87 (Seventh Claim For Relief). Sixth, Plaintiffs allege that Defendants have violated 29 U.S.C. § 203(m), 29 C.F.R. § 531.30, and Cal.Labor Code § 450 by wrongfully deducting the costs of transportation, housing, and outstanding debt from Plaintiffs' wages. FAC ¶¶ 88–93 (Eighth Claim for Relief). Seventh, Plaintiffs allege that because Defendants have violated all of the above statutes and regulations, their conduct constitutes negligence per se. FAC ¶¶ 111–14 (Thirteenth Claim for Relief). Eighth, Plaintiffs allege that Defendants negligently supervised the operators, because the Defendants should have known that the operators were employing workers in violation of federal and state law. FAC ¶¶ 115–120 (Fourteenth Claim for Relief). Finally, Plaintiffs allege that Defendants negligently hired the operators to perform garment manufacturing work for them, because Defendants should have known that the operators would violate Plaintiffs' rights. FAC ¶¶ 121–124 (Fifteenth Claim for Relief).

### III. Discussion

Several interrelated motions are currently pending before the Court. The Court will address each group of motions in turn.

### A. Motion for More Definite Statement

Defendants first seek a more definite statement from the Plaintiffs. Under Federal Rule of Civil Procedure 12(e), "[i]f a pleading . . . is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement[.]" However, a motion for a more definite statement must be considered in light of the liberal pleading standards of Rule 8(a) (a Complaint need only be a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"). *See Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072, 1077 (C.D.Cal.1994) ("Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules."); *see also* Schwarzer, et al., *Federal Civil Procedure* § 9:349 ("A motion for a more definite statement attacks unintelligibility in a pleading, not simply mere lack of detail."). Thus, a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading. *Boxall v. Sequoia Union High School District*, 464 F.Supp. 1104, 1114 (N.D.Cal.1979).

Defendants assert that Plaintiffs' First Amended Complaint is indefinite in several respects. First, Defendants assert that Plaintiffs sloppily incorporated by reference

all allegations throughout the Complaint, including those only against the "operators." Second, Defendants claim that Plaintiffs' Complaint is indefinite because Defendants do not know which Plaintiffs were held at the El Monte facility and for how long. Finally, Defendants assert that much of the First Amended Complaint is simply vague.

■ While Plaintiffs' First Amended Complaint is not always a model of clarity, it does state its claims. Defendants' briefs amply demonstrate that they do understand the issues presented by the First Amended Complaint. Addressing Defendants' specific arguments, the question of which Plaintiffs were held at the El Monte facility is an issue of detail, not intelligibility. In addition, Defendants did not appear confused by Plaintiffs' incorporation by reference structure.[8] Moreover, the Court has no doubt that Defendants will be able to frame a responsive pleading to Plaintiffs' First Amended Complaint. Accordingly, Defendants' motion for a more definite statement is denied.

**B. Motions to Dismiss**

Before the Court are essentially three separate motions to dismiss pursuant primarily to Federal Rule of Civil Procedure 12(b)(6).[9] However, because each of the Defendants has joined in all three motions, and because the motions overlap in their arguments, the Court will not address each motion separately. Rather, the Court will address each motion's arguments in the context of each relevant cause of action.

**1. Standard for Motion to Dismiss for Failure to State a Claim**

■ A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). A Rule 12(b)(6) dismissal is proper only

where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

■ A court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986); *see also Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980) (finding that the complaint must be read in the light most favorable to the plaintiff). However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981); *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir.1968), *cert. denied*, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969).

■ Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir.1991), *overruled on other grounds by Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., et al.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). A court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir.1986), *abrogated on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

---

8. Tellingly, Defendants did not mistakenly move to dismiss causes of action alleged solely against the "operator" Defendants. Evidently, Defendants could distinguish between the two.

9. In one of the motions, Defendants assert that if the federal claims are dismissed, the state claims should be dismissed pursuant to Federal Rule 12(b)(1).

Lastly, a Rule 12(b)(6) motion "will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled." Schwarzer, et al., *Civil Procedure Before Trial* § 9:230. "It need not appear that plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Doe v. United States Dept. of Justice.*, 753 F.2d 1092, 1104 (D.C.Cir.1985); *see also Doss v. South Central Bell Telephone Co.*, 834 F.2d 421, 425 (5th Cir.1987) (demand for improper remedy not fatal if claim shows plaintiff entitled to different form of relief).

### 2. Analysis

#### a. Statute of Limitations

Defendants first assert that Plaintiffs' claims are barred by the statute of limitations. Plaintiffs do not explicitly address this argument in their Opposition, but in their First Amended Complaint, Plaintiffs state that "[a]ny statute of limitations relating to the causes of action alleged in this complaint has been suspended for the period of plaintiffs' false imprisonment. Plaintiffs were unable to seek appropriate remedies, including the filing of a lawsuit, until at least August 2, 1995." FAC ¶ 30.

The Court agrees. Two limitations schemes are relevant to this case: (1) For Plaintiffs' federal cause of action for unpaid minimum wages and overtime compensation, the governing statute is 29 U.S.C. § 255; (2) For Plaintiffs' other claims, California law governs.[10] Both limitations schemes are silent on the question of whether the statute can be suspended or tolled on purely equitable grounds. Regardless, both federal and California law recognize equitable tolling in certain instances, "as in the case of inability to bring suit or exercise one's remedy." *Partlow v. Jewish Orphans' Home of Southern California, Inc.*, 645 F.2d 757, 760 (9th Cir.1981), *abrogated on other grounds*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (quoting *Fulton v. NCR Corp.*, 472 F.Supp. 377, 383–84 (W.D.Va.1979)); *see also*

*Lewis v. Superior Court (Perret)*, 175 Cal. App.3d 366, 380, 220 Cal.Rptr. 594 (1985) ("[l]anguage of statutes of limitation must admit to implicit exceptions where compliance is impossible and manifest injustice would otherwise result.").

Clearly, Plaintiffs could not comply with the relevant statutes of limitations during the time in which they were allegedly held at the El Monte facility—indeed, during that time, they were physically restrained. Accordingly, the Court finds that any and all limitations periods were tolled until August 2, 1995, when Plaintiffs were released from the El Monte facility by officials of the Department of Labor Standards Enforcement ("DLSE"). Because Plaintiffs filed their action on September 5, 1995, only one month later, Plaintiffs' action is not barred by any statute of limitations.

#### b. Plaintiffs' Second Cause of Action Under 29 U.S.C. § 216(b) For Failure to Pay Minimum Wage and Overtime

In their second claim for relief, Plaintiffs assert that Defendants have violated sections 6 and 7 of the FLSA (29 U.S.C. §§ 206 & 207) by failing to pay Plaintiffs the federal minimum wage, as well as overtime benefits. Defendants contend that Plaintiffs' claim fails in two respects. First, Defendants assert that the complaint filed on August 16, 1995 by the United States Secretary of Labor in *Reich v. Uvawas*, Case No. CV 95–5474 WDK (JRx) terminated Plaintiffs' right to sue for unpaid compensation. In the alternative, Defendants argue that Plaintiffs' claim fails because Defendants were not Plaintiffs' "employers" within the meaning of the FLSA. The Court will address each argument in turn.

#### i. Effect of Filing of Action By Secretary of Labor Against Individual "Operator" Defendants

This question presents an issue of statutory construction not definitively resolved by the federal courts. Under 29 U.S.C. § 216(b), an employee has a private right to

---

**10.** Because Plaintiffs' other federal claims do not utilize a federal statute of limitations, the Court will apply California law. *Hardin v. Straub*, 490 U.S. 536, 538, 109 S.Ct. 1998, 2000, 104 L.Ed.2d 582 (1989).

sue for minimum wage or overtime compensation withheld in violation of 29 U.S.C. §§ 206 or 207. However, this right terminates "upon the filing of a complaint by the Secretary [of Labor] in an action ... in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation ... owing to such employee by an employer ... unless such action is dismissed without prejudice on motion of the Secretary." § 216(c). *See also* § 216(b) (right to sue terminates if Secretary of Labor brings suit for injunctive relief under § 217).

On August 16, 1995, Secretary of Labor Robert B. Reich filed an action to enjoin continuing FLSA violations and recover minimum wage and overtime compensation due to Plaintiffs. *See* Mervyn's' Request for Judicial Notice, Exhibit A ("Reich Complaint").[11] Secretary Reich's suit names eight of the individual operators as defendants: Tavee Uvawas, Sunee Manasulangkoon, Suporn Veraytwilai, Thanes Panthong, Prawit Phpharasujserm, Sanchai Pongprapin, Nuttaphan Ketwattha, and Rampa Suthaprasit. *See* Reich Complaint. The Secretary's action is thus *not* against the Defendants at issue in the instant motions: Mervyn's, Tomato, Bigin, L.F. Sportswear, and B.U.M. Regardless, Defendants assert that because Plaintiffs did not file suit until September 5, 1995, the Secretary's prior filing terminated Plaintiffs' right to sue. Plaintiffs assert that because Secretary Reich named only the "operator" defendants in his action, and not the "manufacturers" at issue here, Plaintiffs' action can proceed.

 The enforcement provisions of the FLSA (29 U.S.C. § 216 and 217) serve several equally important Congressional purposes. First, the provisions are designed to "secur[e] to employees restitution of statutorily mandated wages." *Marshall v. Coach House Restaurant, Inc.,* 457 F.Supp. 946, 951 (S.D.N.Y.1978). Thus, the FLSA ensures that individual employees will be compensated within the dictates of federal law. Second, the enforcement sections ensure that violators are "deprived of the use of unlaw-

fully withheld compensation ..., thereby 'protect(ing) complying employers from the unfair wage competition of the noncomplying employers." *Marshall,* 457 F.Supp. at 952 (quoting *Hodgson v. Wheaton Glass Co.,* 446 F.2d 527, 535 (3d Cir.1971) and Sen.Rep. No. 145, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.C.C.A.N. 1620, 1659) Third, the enforcement provisions serve to deter future violations of the FLSA.

 There are three main vehicles for enforcing the minimum wage and overtime provisions of the FLSA. First, under § 216(b), an employee may sue an employer for "unpaid minimum wages, or ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages." Second, the Secretary of Labor may sue under § 216(c) to recover an employee's "unpaid minimum wages or unpaid overtime compensation and an equal amount as liquidated damages." Finally, the Secretary of Labor is authorized to sue to obtain an injunction under § 217. Under the statutory scheme, actions by the Secretary of Labor take precedence over actions by employees. Indeed, in the 1961 amendments to the FLSA (which granted more power to the Secretary of Labor), Congress changed the "governmental policy toward enforcement ... from reliance primarily on private enforcement to reliance on enforcement by the Secretary." *Hodgson,* 446 F.2d at 535.

This policy shift was brought about primarily because of the ineffectiveness of solely private enforcement of the FLSA. Prior to the 1961 amendments, the "Secretary of Labor [had] no authority to require the payment of minimum wages and overtime compensation not paid in compliance with the law, except where an employee requests that an action be brought by the Secretary of Labor." 1961 U.S.C.C.A.N. at 1658. This limitation on the power of the Secretary of Labor "impeded the Secretary in his efforts to enforce the act since many employees who [had] not been paid in compliance with the act [were] hesitant about requesting legal action against their employers." *Id.* In re-

---

11. The Court takes judicial notice of the Complaint in *Reich v. Uvawas, et al.,* Case No. CV 95– 5474 ABC (JRx) pursuant to Federal Rule of Evidence 201.

sponse, Congress amended sections 216 and 217 to enhance the powers of the Secretary of Labor.

■ At the same time, Congress lessened the power of individual employees to enforce the minimum wage and overtime provisions of the FLSA by making employees' enforcement powers dependent upon the actions of the Secretary of Labor. Under § 216(b), an employee's right to bring an action for unpaid minimum wage or overtime compensation "terminate[s] upon the filing of a complaint by the Secretary of Labor in an action under section 217 … in which … restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation[.]" Similarly, under § 216(c), an individual employee's enforcement right "terminate[s] upon the filing of a complaint by the Secretary in an action … in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation[.]" *See also E.E.O.C. v. Pan American World Airways, Inc.,* 897 F.2d 1499, 1505 (9th Cir.), *cert. denied,* 498 U.S. 815, 111 S.Ct. 55, 112 L.Ed.2d 31 (1990) ("private lawsuits are secondary in the statutory scheme"); [12] *San Antonio Metropolitan Transit Authority v. McLaughlin,* 876 F.2d 441, 445 (5th Cir.1989) (FLSA "allows suits involving the Secretary to take precedence over employee actions involving the same employer."); *Wirtz v. Robert E. Bob Adair, Inc.,* 224 F.Supp. 750, 755 (W.D.Ark.1963) ("the filing of the suit [by the Secretary of Labor] terminates the section 16(b) rights of employees"). These provisions were written into the FLSA in order to "relieve the courts and employers of the burden of litigating a multiplicity of suits based on the same violations of the act by an employer." 1961 U.S.C.C.A.N. at 1659. They also serve to "substantially reduce the possibility of inconsistent adjudications[.]" *Donovan v. University of Texas at El Paso,* 643 F.2d 1201, 1207 (5th Cir.1981); *see also Pan American,* 897 F.2d at 1506.

As stated above, Defendants contend that the Secretary of Labor's prior filed action precludes Plaintiffs' second cause of action under § 216(b), even though the two actions are against different defendants. Defendants' argument proceeds in several steps. As step one, Defendants assert that because Plaintiffs have pled that the "manufacturers" and the "operators" are joint employers, Plaintiffs' work must be "considered as one employment[.]" *Gilbreath v. Cutter Biological, Inc.,* 931 F.2d 1320, 1329 (9th Cir.1991) (Rymer, J., concurring) (citing 29 C.F.R. § 791.2(a)). Because Plaintiffs' work constituted one employment, both alleged joint employers "are responsible, both individually and jointly, for compliance with all of the applicable provisions of the" FLSA. 29 C.F.R. § 791.2(a); *see also Salinas v. Rodriguez,* 963 F.2d 791, 793 (5th Cir.1992). Because the "operators" are jointly and individually liable for the unpaid compensation, the Secretary of Labor can, in theory, recoup all of Plaintiffs' losses by suing only the "operators." In essence, because of 29 C.F.R. § 791.2, the Secretary of Labor may make the strategic choice of *not* suing one joint employer (e.g. the "manufacturers"), but still receive the full restitution of unpaid compensation from the other joint employer. Accordingly, Defendants assert that when presented with the opportunity to sue the "manufacturers," the Secretary of Labor utilized his discretion and declined to do so, deciding instead to sue only the "operators." [13] Defendants argue that sections 216(b) and (c) prevent Plaintiffs from interfering with the Secretary's strategic choice.

Plaintiffs essentially contend that the FLSA's enforcement provisions are employer-specific. Therefore, Plaintiffs argue that under §§ 216(b) and (c), Secretary Reich's decision to sue only the "operators" does not preclude this separate action against the

---

**12.** Section 7 of the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 626) incorporates the remedies and procedures contained in sections 16 and 17 of the FLSA (29 U.S.C. §§ 216 & 217). *Pan American,* 897 F.2d at 1504. Therefore, ADEA cases are also persuasive authority.

**13.** Further, Plaintiffs could theoretically sue the Secretary of Labor for this strategic choice, if that decision was arbitrary or capricious. *See International Ladies' Garment Workers' Union v. Donovan,* 722 F.2d 795 (D.C.Cir.1983).

"manufacturers." The Court agrees. The plain language of §§ 216(b) and (c) does not dispose of this question. Indeed, the language itself is amenable to either interpretation. However, the legislative history and basic purposes of the FLSA mitigate in favor of allowing Plaintiffs' action to proceed.

 As stated by the Ninth Circuit, "in construing the FLSA, we must be mindful of the directive that it is to be liberally construed to apply to the furthest reaches consistent with Congressional direction." *Biggs v. Wilson,* 1 F.3d 1537, 1539 (9th Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 902, 127 L.Ed.2d 94 (1994) (citing *Mitchell v. Lublin, McGaughy & Assoc.,* 358 U.S. 207, 211, 79 S.Ct. 260, 263–64, 3 L.Ed.2d 243 (1959)). Because the FLSA is a remedial statute, it should be construed "in order to further Congress' goal of providing broad federal employment protection." *Abshire v. County of Kern,* 908 F.2d 483, 485 (9th Cir. 1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991).

Preventing Plaintiffs from seeking unpaid minimum wage and overtime compensation from Defendants would only serve to frustrate Congress' goal. As discussed above, the minimum wage and overtime enforcement provisions serve three basic purposes. First, the sections ensure that individual employees will be compensated for their work. Second, the enforcement provisions prevent employers from gaining an unfair advantage against competitors by wrongfully withholding due compensation. And third, the enforcement provisions deter future violations of the minimum wage and overtime provisions of the FLSA.[14] If the "manufacturers" are in fact Plaintiffs' "joint employers," the Secretary of Labor's action against the "operators" serves only one of these basic policy goals—compensation.[15] The Secretary's action will not prevent the "manufacturers" from obtaining an unfair advantage in the marketplace, and will not deter future misconduct by the "manufacturers." Moreover, if Plaintiffs' action under § 216(b) is terminated, these goals will remain unmet, thus frustrating the basic purposes behind the FLSA.

 The ambiguous language of §§ 216(b) and (c) does not require such a result, which arguably contravenes the intent of Congress. Indeed, the sections do lend themselves to being read as employer-specific, as does the legislative history. *See* § 216(c) (an employee's right to sue "shall terminate upon the filing of a complaint by the Secretary in an action ... in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation ... owing to such employee *by an employer* [.]") (emphasis added); 1961 U.S.C.C.A.N. at 1659 (stating that the provisions "relieve the courts and employers of the burden of litigating a multiplicity of suits based on the *same violations of the act by an employer.*") (emphasis added). And, although no reported federal case has addressed this precise issue, the case law interpreting §§ 216(b) and 216(c) does not contradict this "employer-specific" interpretation. *See, e.g. Pan American,* 897 F.2d at 1505 (citing the language in 1961 U.S.C.C.A.N. at 1659); *San Antonio,* 876 F.2d at 445 (stating that the FLSA "allows suits involving the Secretary to take precedence over employee actions *involving the same employer.*") (emphasis added).

 Consistent with this Court's duty to construe the FLSA broadly, and in light of the statute's language, history, and goals, the Court will adopt Plaintiffs' "employer-specific" interpretation of §§ 216(b) and (c).[16] Ac-

---

14. These goals are, of course, interconnected. Forcing employers to compensate employees pursuant to the FLSA prevents employers from obtaining an unfair advantage in the marketplace and deters future misconduct.

15. Because joint employers are jointly and individually liable, the Secretary may obtain full restitution by suing one employer or the other.

16. Defendants argue that Plaintiffs' "employer-specific" interpretation will interfere with the actions brought by the Secretary of Labor and spawn a multiplicity of suits. Essentially, Defendants contend that if parallel proceedings against different employers are allowed to proceed, both alleged employers will then be allowed to sue each other for indemnity and/or contribution, thus producing a multiplicity of litigation. Further, the threat of a later indemnity suit by a joint employer will discourage employers sued by the Secretary of Labor from settling for an amount less than the actual amount of minimum wages

cordingly, the Court finds that the Secretary of Labor's complaint in *Reich v. Uvawas* does not bar Plaintiffs' second cause of action.[17]

### ii. Whether Defendants are "Employers" Within the Meaning of the Fair Labor Standards Act

Defendants also assert that even if Plaintiffs' second cause of action can proceed under §§ 216(b) & (c), it fails because none of the "manufacturer" defendants are "employers" within the meaning of the FLSA.

This issue turns on the meaning of the term "employment," which is not adequately defined by the FLSA itself. Under the FLSA, the verb "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA's definition of "employer" obliquely includes "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). An "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e). "The Supreme Court has instructed that courts are to interpret the term 'employ' in the FLSA expansively." *Hale v. State of Arizona*, 993 F.2d 1387, 1393 (9th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993) (citing *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 326–27, 112 S.Ct. 1344, 1350, 117 L.Ed.2d 581 (1992)). The definition has "striking breadth" and "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide*, 503 U.S. at 326, 112 S.Ct. at 1350; *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728, 67 S.Ct.

1473, 1475, 91 L.Ed. 1772 (1947) ("The definition of 'employ' is broad."); *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir.1983) (the concept of employment "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."); *Real v. Driscoll Strawberry Associates*, 603 F.2d 748, 753 (9th Cir.1979) (citing same principle).

In light of this broad interpretation, the Supreme Court has commanded that the question of "whether there is an employment relationship under the FLSA is tested by 'economic reality' rather than 'technical concepts.'" *Hale*, 993 F.2d at 1393 (quoting *Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 33, 81 S.Ct. 933, 936–37, 6 L.Ed.2d 100 (1961)). A court must "consider the totality of the circumstances of the relationship[.]" *Hale*, 993 F.2d at 1394 (citing *Bonnette*, 704 F.2d at 1470); *see also Real*, 603 F.2d at 754 (quoting *Rutherford*, 331 U.S. at 730, 67 S.Ct. at 1477) (the determination "depends 'upon the circumstances of the whole activity.'"). Accordingly, "[e]conomic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA." *Real*, 603 F.2d at 754.[18]

The Ninth Circuit has identified several factors to guide the analysis, such as "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette*, 704 F.2d at 1470; *see also Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir.1981) (also discussing whether

---

or overtime compensation due, thus interfering with the Secretary of Labor's action. The Court recognizes that these are strong concerns. However, in light of the Court's duty to construe the FLSA broadly to ensure that employees are fully and fairly compensated for their labor, Defendants' arguments do not outweigh the serious policy concerns mitigating in favor of allowing the Plaintiffs' suit under § 216(b) to proceed.

**17.** By necessary implication, however, Plaintiffs' minimum wage and overtime claims against the "operators" named in the Secretary of Labor's Complaint must be dismissed.

**18.** Thus, Defendants' citation of *Maddox v. Jones*, 42 F.Supp. 35 (N.D.Ala.1941) (pre-dating the Supreme Court's *Rutherford* decision) for the proposition that, as a matter of law, "[e]mployees of an independent contractor are not the employees of a contractee although the work done under the contract is for the ultimate benefit and use of the contractee" is misplaced. Under the "economic reality" test, technical or contractual labels are simply not dispositive—a more factually driven inquiry is required. *See also Real*, 603 F.2d at 754 ("The common law concepts of 'employee' and 'independent contractor' are not conclusive determinants of the FLSA's coverage.").

the workers' service is "an integral part of the alleged employer's business."). These factors "provide a useful framework for analysis," but are neither exclusive nor conclusive. *Id.* "[T]hey are not etched in stone and will not be blindly applied." *Id.; see also Hale,* 993 F.2d at 1394 (citing same language). A court must not "focus[ ] on selected and isolated control factors ... [and] lose[ ] sight of the circumstances of the whole activity." *Castillo v. Givens,* 704 F.2d 181, 190 (5th Cir.), *cert. denied,* 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983). Indeed, courts have found employment relationships "even though the defendant-employer had no control over certain aspects of the relationship." *Castillo,* 704 F.2d at 190.

▮▮▮ Furthermore, there may be more than one "employer." The fact that the "operator" defendants employed the workers does not preclude Plaintiffs' allegations that the "manufacturer" defendants also *jointly* employed the workers. *See* 29 C.F.R. § 791.2 (describing various "joint" employment situations); *Castillo,* 704 F.2d at 188; *Campbell v. Miller,* 836 F.Supp. 827, 831 (M.D.Fla.1993) ("An employer cannot shield himself from liability by placing a recruiter-contractor between himself and the laborers, [sic] by giving the recruiter contractor responsibility for direct oversight of the laborers."). Ultimately, "[t]he touchstone of 'economic reality' in analyzing a possible employee/employer relationship for purposes of the FLSA is dependency" of the employee upon the alleged employer. *Id.* at 190; *see also Sureway Cleaners,* 656 F.2d at 1370 (citing *Bartels v. Birmingham,* 332 U.S. 126, 130, 67 S.Ct. 1547, 1549–50, 91 L.Ed. 1947 (1947)) (the question is "whether, as a matter of economic reality, the individuals 'are dependent upon the business to which they render service.' ").

▮▮ The "manufacturer" Defendants in this case are clearly removed from the actual garment manufacturing process that transpired in the El Monte facility. And, there is no "traditional" employment relationship between the Defendants and the Plaintiffs. Plaintiffs do not plead that the "manufacturer" Defendants had the power to hire or fire the individual workers. Nor do Plaintiffs plead that Defendants directly supervised or controlled Plaintiffs' work schedules or conditions. However, as dictated by the Supreme Court, this Court must construe the provisions of the FLSA expansively and look to the economic realities of the relationship between the parties.

As pled by the Plaintiffs, the "manufacturer" Defendants have "contracted with [the operators] to produce garments at prices too low to permit payment of employees' minimum wages and overtime. Manufacturers utilize the business practice of contracting out garment manufacturing work in part to avoid compliance with labor laws and liability for violation of those laws." FAC ¶ 26. Plaintiffs further allege that the "manufacturer" Defendants "directly or indirectly employed plaintiffs ... as industrial homeworkers ... and exercised meaningful control over the work plaintiffs performed[.]" FAC ¶ 19–20. In addition, Plaintiffs allege that the "operators" "acted, in effect, as supervisors and managers for" the "manufacturer" Defendants. FAC ¶ 19. Essentially, Plaintiffs assert that the El Monte facility "was an integral part of the process of garment manufacturing of each" "manufacturer" Defendant. FAC ¶ 19.

Plaintiffs also allege that the "manufacturer" Defendants have a policy of contracting at "unfairly low prices by utilizing garment contractors who are ... chronic violators of labor laws, thus condemning plaintiffs ... to long hours of work without minimum wages and overtime pay[.]" FAC ¶ 27. Plaintiffs also allege that the workers are an "integral" part of the "manufacturer" Defendants' business. FAC ¶ 19; *Sureway Cleaners,* 656 F.2d at 1370. This allegation is similar to the allegation recounted in the Fifth Circuit's *Castillo* ruling. In that case, the "defendant did not pay [the intermediate contractor] enough for [him] to pay the workers minimum wage; it was therefore impossible for [the contractor] to comply with the FLSA." *Castillo,* 704 F.2d at 192. Thus, "[t]he economic reality of the situation was that the workers were dependent upon defendant— not [the intermediate contractor]—to pay them the minimum wage." *Id.*

Ultimately, Plaintiffs' most important allegation is that Defendants "directly or indirectly employed plaintiffs ... and exercised meaningful control over the work plaintiffs performed[.]" FAC ¶ 19–20. In light of the liberal pleading standards of Federal Rule 8, and Plaintiffs' allegations concerning the "economic reality" of the garment business, this claim alone sufficiently alleges an "employment" relationship between the "manufacturer" Defendants and the garment workers. *See* 29 C.F.R. § 791.2 (a "joint employment" situation will exist "[w]here one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee.").

In conclusion, under the notice pleading of Rule 8 and the *Rutherford* "economic reality" standard, Plaintiffs have sufficiently alleged an employment relationship between the Plaintiffs and the "manufacturer" Defendants within the meaning of the FLSA. Essentially, Plaintiffs have successfully pled that the "manufacturers" and the "operators" were the "joint" employers of the Plaintiffs. Accordingly, Defendants' motion to dismiss Plaintiffs' second cause of action must be denied.[19]

### c. Plaintiffs' Third Cause of Action Under California Law for Failure to Pay Minimum Wage and Overtime

Plaintiffs' third claim for relief is identical to Plaintiffs' second claim, except that it arises under California labor law. Defendants argue that Plaintiffs' third cause of action fails because Defendants are not "employers" under California labor law. Defendants contend that because the broad federal definition of "employer" does not apply in California, the Court must apply the more restrictive common law conception of "employer." Defendants assert that under this narrow reading of "employer," Plaintiffs' third cause of action cannot stand.

As with federal labor law, California law mandates a minimum wage and overtime compensation. *See* Cal.Labor Code §§ 1197 (minimum wage) and 1198 (overtime). Under Cal.Labor Code § 1194, "any employee receiving less than the legal minimum wage or the legal overtime compensation ... is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Further, under Cal.Labor Code § 1194.2, in any action to recover unpaid minimum wages (not overtime compensation), an employee "shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid," unless the employer demonstrates to the court that the omission was reasonable and in good faith.[20]

The terms "employer," "employee," and "employ" are not specifically defined in the Wages, Hours, and Working Conditions sections of the California Labor Code. *See* Cal.Labor Code §§ 1171–1205. In addition, no reported California decisions have directly addressed the issue. However, as with the federal FLSA, the California law governing wages is remedial in nature and must be "liberally construed." *See California Grape & Tree Fruit League v. Industrial Welfare Commission*, 268 Cal.App.2d 692, 698, 74 Cal.Rptr. 313 (1969); *see also McIntosh v. Aubry (Pricor, Inc.)*, 14 Cal.App.4th 1576, 1589, 18 Cal.Rptr.2d 680 (1993) ("Courts will liberally construe prevailing wage statutes"). The wage statutes "are not construed within narrow limits of the letter of the law, but rather are to be given liberal effect to promote the general object sought

---

**19.** The Court notes that Plaintiffs may recover unpaid minimum wages and overtime compensation in four conceivable ways: (1) the second cause of action under the FLSA; (2) the third cause of action under the California Labor Code; (3) the Secretary of Labor's action (*Reich v. Uvawas*); and (4) the California Labor Commissioner's action (*Bradshaw v. Uvawas*). Of course, because Plaintiffs seek restitution of their unpaid wages, Plaintiffs will not be entitled to a multiple recovery.

**20.** The Department of Labor may also bring an action to recover unpaid minimum wages or overtime compensation, with or without the employee's consent. Cal.Labor Code § 1193.6. However, unlike 29 U.S.C. § 216(b), a Department of Labor action does not terminate the employee's right to sue, unless the employee consents to the Department's action on his or her behalf. § 1193.6.

to be accomplished." *California Grape*, 268 Cal.App.2d at 698, 74 Cal.Rptr. 313.

 Thus, in determining the applicability of the minimum wage and overtime provisions of the California Labor Code, the Court must look to the fundamental remedial purposes behind the laws. Given this duty, the Court finds that the California courts would likely adopt the federal FLSA's broad definition of "employment."[21] The California courts would likely focus on the "economic realities" of the relationship, rather than on mere contractual or technical distinctions.

The Court reaches this conclusion for three main reasons. First, it is evident that the federal and state minimum wage and overtime provisions are analogous and complementary. Accordingly, federal authorities defining the concept of employment (*see* discussion above) are extremely persuasive to the Court in its determination of the California definition. Second, in its Order Regulating Wages, Hours, and Working Conditions in the Manufacturing Industry, the California Industrial Welfare Commission defines the terms "employ," "employee," and "employer" extremely broadly, and in terms almost identical to 29 U.S.C. § 203(g) ("employ"), § 203(e) ("employee"), and § 203(d) ("employer"). *See* Industrial Welfare Commission Order 1–89, 8 California Regul.Code § 11010 ("IWC Wage Order"). The IWC Wage Order states that the verb "employ" "means to suffer, or permit to work." *Compare* 29 U.S.C. § 203(g) ("'employ' includes to suffer or permit to work"). The IWC Wage Order states that an "employee" is "any person employed by an employer." *Compare* 29 U.S.C. § 203(e) ("the term 'employee' means any individual employed by an employer"). Finally, the IWC Wage Order states that an "employer" is "any person ... who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." *Compare* 29

U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee"). Thus, the IWC has adopted the federal FLSA's definitions of these terms.

Third, the California Supreme Court has construed a related remedial statute to contain an extremely broad definition of "employer." In *S.G. Borello & Sons v. Department of Industrial Relations*, 48 Cal.3d 341, 256 Cal.Rptr. 543, 769 P.2d 399 (1989), the California Supreme Court construed the Worker's Compensation Act's definition of "employment" to be "not inherently limited by common law principles." *Id.* at 352, 256 Cal.Rptr. 543, 769 P.2d 399. Mindful of the "history and fundamental purposes" of the statute, the Court found that in determining whether "employment" existed, a court must consider "[t]he nature of the work, and the overall arrangement between the parties," and not technical or contractual distinctions. *Id.* at 353, 256 Cal.Rptr. 543, 769 P.2d 399. The Court stated that "[e]ach service arrangement must be evaluated on its facts, and the dispositive circumstances may vary from case to case." *Id.* at 354, 256 Cal.Rptr. 543, 769 P.2d 399. Moreover, in reaching this conclusion, the California Supreme Court cited with approval the various United States Supreme Court cases defining "employment" in the context of the FLSA. *Id.* at 352, 256 Cal.Rptr. 543, 769 P.2d 399.

 For these reasons, and in light of the general remedial purposes of the prevailing wage statutes, the Court thus interprets California law to construe the terms "employ", "employee," and "employer" broadly. Under these broad definitions, and for the same reasons discussed above (in the context of the FLSA cause of action), Plaintiffs have sufficiently pled that Defendants are Plaintiffs' "employers" within the meaning of the California prevailing wage statutes. Accord-

---

**21.** A federal court interpreting state law is bound by the decisions of the highest state court. *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir.1991), *cert. denied*, 502 U.S. 1073, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992). When the state supreme court has not spoken on an issue directly presented to a federal court, the federal court must

determine what result the state supreme court would reach based on state appellate court decisions, statutes, and treatises. *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 510, 130 L.Ed.2d 417 (1994).

ingly, Defendants' motion to dismiss Plaintiffs' third cause of action must be denied.

### d. Plaintiffs' Fourth Cause of Action Under Federal and California Law for the Unlawful Manufacture of Garments by Industrial Homework

In their fourth claim for relief, Plaintiffs assert that Defendants have violated federal and California law by unlawfully employing Plaintiffs as industrial homeworkers.[22] First, Plaintiffs allege that Defendants have violated 29 U.S.C. §§ 211(d) and 215(a)(5) by employing Plaintiffs as industrial homeworkers without first obtaining the "special homework certificate" required by 29 C.F.R. § 530.2. Second, Plaintiffs contend that by employing Plaintiffs as garment industry homeworkers, Defendants have violated California Labor Code § 2651's blanket ban on such employment. Defendants contend that both claims fail because there is no private right of action to enforce either regulatory scheme. The Court will address the federal and state theories in turn.

#### i. Federal Law Governing Industrial Homeworkers

 Under 29 U.S.C. § 215(a)(5), it is unlawful to violate any regulation or order made pursuant to 29 U.S.C. § 211(d). Section 211(d) empowers the Secretary of Labor "to make such regulations and orders regulating, restricting, or prohibiting industrial homework as are necessary or appropriate to prevent the circumvention or evasion of and to safeguard the minimum wage rate[.]" Pursuant to § 211(d), the Secretary of Labor promulgated 29 C.F.R. § 530.2, which provides that any person who employs industrial homeworkers (in specifically covered industries, as defined by 29 C.F.R. § 530.1) must obtain a special homework certificate from the Department of Labor for each homeworker. Plaintiffs assert that because De-

fendants have not obtained such a certificate (contrary to the dictates of § 530.2), they have violated 29 U.S.C. § 215(a)(5) (which states that it is unlawful to violate regulations promulgated pursuant to 29 U.S.C. § 211(d)). Neither the FLSA nor the regulations implementing it expressly create a private right of action to enforce § 215(a)(5) or regulations promulgated by the Secretary of Labor. Thus, the federal part of Plaintiffs' fourth cause of action turns on whether there exists an *implied* private right to sue for violations of 29 U.S.C. § 215(a)(5).

 In determining whether a federal statute contains an implied right of action, a court must apply the four-factor test established by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *See Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995); *Stupy v. United States Postal Service,* 951 F.2d 1079, 1081 (9th Cir.1991). As identified by the Ninth Circuit in *Stupy,* the *Cort* factors are as follows:

> (i) the plaintiff must belong to the class for whose *especial* benefit the statute was created; (ii) the legislature must have shown an intent, either explicitly or implicitly, to create a private remedy; (iii) finding an implied cause of action must be consistent with the underlying purposes of the statute; and (iv) the cause of action must not be one that has traditionally been left to state law.

*Stupy,* 951 F.2d at 1081; *see also Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981) ("Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies.").

---

**22.** As defined by 29 C.F.R. § 530.1(d), industrial homework "means the production by any person in or about a home, apartment, tenement, or room in a residential establishment of goods for an employer who suffers or permits such production, regardless of the source (whether obtained from the employer or elsewhere) of the materials used by the homeworker in such production." California law defines "industrial homework" as

"any manufacture in a home of materials or articles for an employer when such articles or materials are not for the personal use of the employer or a member of his or her family." Cal.Labor Code § 2650. Plaintiffs assert that because they were forced to both work and reside in the El Monte facility, they classify as "homeworkers" within the meaning of federal and California law.

Of the four *Cort* factors, the most important by far is Congressional intent. *See Northwest*, 451 U.S. at 91, 101 S.Ct. at 1580 ("the ultimate question ... is whether Congress intended to create the private remedy"); *Parks*, 51 F.3d at 1484 ("These factors are not given equal weight; the critical inquiry is congressional intent."); *Stupy*, 951 F.2d at 1081 (finding that legislative intent is "the dispositive issue"); *see also Cannon v. University of Chicago*, 441 U.S. 677, 740, 99 S.Ct. 1946, 1980, 60 L.Ed.2d 560 (1979) (Powell, J., dissenting) (vehemently criticizing the *Cort* four-part test for diverting courts from the only proper inquiry: legislative intent). As stated by the Supreme Court, "[w]hile some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to effectuate the purposes of a given statute ..., what must ultimately be determined is whether Congress intended to create the private remedy asserted[.]" *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). Thus, given the primacy of legislative intent, "[a]n evaluation of the other elements is not necessary if the court finds that Congress did not intend to create a private right of action." *Stupy*, 951 F.2d at 1081 (citing *California v. Sierra Club*, 451 U.S. 287, 298, 101 S.Ct. 1775, 1781–82, 68 L.Ed.2d 101 (1981)).

Because this issue is ultimately a question of statutory construction, "it is appropriate to begin with the language of the statute itself." *Northwest*, 451 U.S. at 91, 101 S.Ct. at 1580. The FLSA does not expressly create a right to sue under 29 U.S.C. § 215(a)(5). Section 215(a)(5) merely states that it is unlawful to violate a regulation promulgated pursuant to 29 U.S.C. § 211(d). Because 29 C.F.R. § 530.2 was promulgated pursuant to 29 U.S.C. § 211(d), the violation of 29 C.F.R. § 530.2 is unlawful under 29 U.S.C. § 215(a)(5). However, this is not the issue. The question is whether a private litigant can *sue* to remedy violations of § 215(a)(5). On this point, § 215(a)(5) is silent.

The enforcement and penalty sections of the FLSA, 29 U.S.C. §§ 216 and 217, recognize several rights of action. First, as discussed above, an employee may sue an employer for unpaid minimum wages or overtime compensation. *See* § 216(b). Second, an employee terminated in retaliation for reporting violations of the FLSA may sue for legal or equitable relief. *See* §§ 215(a)(3) and 216(b). Third, the Secretary of Labor may sue for unpaid minimum wages or overtime compensation, or seek an injunction. *See* §§ 216(c) and 217. Of course, the Secretary of Labor may also enforce his or her own regulations. Finally, a person may be prosecuted for violating the provisions of § 215.

Section 215(a)(5) is not mentioned in this list; nor are regulations promulgated by the Secretary of Labor. As stated by the Supreme Court, "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'" *Transamerica*, 444 U.S. at 19–20, 100 S.Ct. at 247 (quoting *Botany Worsted Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929)); *see also Meghrig v. KFC Western, Inc.*, —— U.S. ——, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996) (quoting same language). As a general rule, "[i]f the statute itself provides 'a particular remedy or remedies,' we should not add others." *Parks*, 51 F.3d at 1484 (quoting *Miscellaneous Service Workers Local # 427 v. Philco–Ford Corp.*, 661 F.2d 776, 781 (9th Cir.1981)).

The legislative history behind the FLSA and § 215(a)(5) is silent on whether private litigants can sue to enforce regulations promulgated by the Secretary of Labor. Additionally, the only federal cases after *Cort* to address the question of whether a private right of action exists under § 215(a)(5) have found that no such right exists. *See O'Quinn v. Chambers County, Texas*, 636 F.Supp. 1388, 1392 (S.D.Tex.1986), *amended on other grounds*, 650 F.Supp. 25 (S.D.Tex.1986); *Marchak v. Observer Publications, Inc.*, 493 F.Supp. 278, 281 (D.R.I.1980). Thus, there is no evidence that Congress intended to create a right of action to enforce § 215(a)(5). In-

deed, given the existence of other private rights of action under the FLSA (*see* § 216(b)), it appears that Congress did *not* intend to provide a private right to enforce § 215(a)(5).

Because evidence of Congressional intent is the "dispositive" issue, the Court need not address the other *Cort* factors. *Stupy*, 951 F.2d at 1081 ("An evaluation of the other elements is not necessary if the court finds that Congress did not intend to create a private right of action."). Finding no evidence of Congressional intent to create a private right of action to enforce § 215(a)(5), the Court will not imply one. Therefore, Plaintiffs' federal cause of action to remedy violations of § 215(a)(5) must be dismissed.

### ii. California Law Governing Industrial Homeworkers

Under California Labor Code § 2651, the manufacture of "wearing apparel" by industrial homework is "unlawful." Plaintiffs allege that Defendants violated this statute by employing the garment workers who lived at the El Monte facility. Defendants contend that no private cause of action exists to enforce § 2651.

Neither § 2651 nor any other provision of the Industrial Homework Act ("IHA") explicitly provide for a private right of action. Indeed, the language of the statute focuses only upon governmental agencies. California Labor Code § 2666 states that "[t]he Division of Labor Standards Enforcement shall enforce the provisions" of the IHA, together with the Department of Industrial Relations. Additionally, California Labor Code § 2667 states that "[t]he Attorney General may seek appropriate injunctive relief consistent with, and in furtherance of the purposes of" the IHA.[23] Therefore, because no explicit private right of action exists under the statute, Plaintiffs ask this Court to create one.

■ No California case has directly interpreted the relevant provisions of the Industrial Homework Act or specifically addressed the issue of whether a private right of action exists to enforce its terms. As a general rule, when a statute does not explicitly provide a private right of action, the California courts will imply such a right only when there is evidence that the legislature intended to do so. Thus, the ultimate issue is generally one of divining legislative intent: whether the legislature actually intended to create such a private right of action to enforce a statute. *See Moradi–Shalal v. Fireman's Fund Ins.*, 46 Cal.3d 287, 250 Cal. Rptr. 116, 758 P.2d 58 (1988) (inquiring into the language of the statute, the legislative history, and existence of a comprehensive regulatory scheme to determine whether the legislature intended a private right of action to exist to enforce Cal.Ins.Code § 790.03); *Arriaga v. Loma Linda University*, 10 Cal. App.4th 1556, 13 Cal.Rptr.2d 619 (1992) (performing the same analysis with regard to Cal.Govt.Code § 11135).

Plaintiffs dispute that *Moradi–Shalal* establishes the method of analyzing whether a private right of action exists under a California statute, and attempt to limit *Moradi–Shalal* to its specific facts: the interpretation of Cal.Ins.Code § 790.03. In addition, Plaintiffs dispute that the focus should be primarily on legislative intent. On the contrary, Plaintiffs contend that the proper focus should be on whether a private right of action will further the fundamental purposes of the legislation. Plaintiffs assert that "[v]iolation of a statute embodying a public policy is generally actionable even though no specific remedy is provided in the statute; any injured member of the public for whose benefit the statute was enacted may bring an action." *United Farm Workers of America, AFL–CIO v. Superior Court for the County of Kern*, 47 Cal.App.3d 334, 343, 120 Cal. Rptr. 904 (1975) (quoting *Wetherton v. Growers Farm Labor Assn.*, 275 Cal.App.2d 168, 174, 79 Cal.Rptr. 543 (1969)); *see Middlesex Ins. Co. v. Mann*, 124 Cal.App.3d 558, 569–71, 177 Cal.Rptr. 495 (1981) (looking to the

---

**23.** Plaintiffs seem to assert that because Plaintiffs may sue for unpaid minimum wage and overtime under Cal.Labor Code § 1194, they may sue under the IHA. The Court disagrees. All employees, whether industrial homeworkers or not, have a right of action under Cal.Labor Code § 1194. This right exists independent of the Industrial Homework Act. However, the mere fact that Plaintiffs can sue under § 1194 does not mean that Plaintiffs may sue to enforce § 2561's prohibition on industrial homework in the garment industry.

purposes behind the statute to imply a cause of action for breach of fiduciary duty under the Insurance Code); *see also Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 624 (9th Cir.1987) (pre-*Moradi–Shalal* case applying the *Middlesex* test); *Kentucky Central Life Ins. Co. v. LeDuc*, 814 F.Supp. 832, 836–37 (N.D.Cal.1992) (following both *United Farm Workers* and *Middlesex* (appellate decisions), not the Supreme Court's ruling in *Moradi–Shalal* ).

■■■■ The Court disagrees with Plaintiffs' broad view of the role of the courts, and Plaintiffs' narrow view of *Moradi–Shalal* and the other cases holding that legislative intent is the most important factor in implying a private right of action. In light of *Moradi–Shalal*, the Court is not convinced that the *Middlesex/United Farm Workers* method of analyzing implied rights of action is still good law.[24] Clearly, the task of determining whether a private right of action exists is one of statutory construction—whether the statute explicitly or implicitly provides for such a right. And, "[p]ursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law." *Dyna–Med, Inc. v. Fair Employment and Housing Commission*, 43 Cal.3d 1379, 1386, 241 Cal.Rptr. 67, 743 P.2d 1323 (1987). Certainly, the fundamental purposes of a remedial statute are relevant, but the primary task always must be to determine legislative intent. *See Moradi–Shalal*, 46 Cal.3d at 299–302, 250 Cal.Rptr. 116, 758 P.2d 58; *see also Gates v. Superior Court (Hirata)*, 32 Cal. App.4th 481, 520 n. 11, 38 Cal.Rptr.2d 489 (1995) (in determining whether a private right of action exists, court must focus on legislative intent); *Schaefer v. Williams*, 15

Cal.App.4th 1243, 1248, 19 Cal.Rptr.2d 212 (1993) ("Surely, if the Legislature had intended to create such a private action, it would have done so by clear and direct language."); *Arriaga*, 10 Cal.App.4th at 1562–64, 13 Cal.Rptr.2d 619 (in determining whether a private right of action existed to enforce Cal.Govt.Code § 11135, court looked primarily to the language and history of the statute); *Maler v. Superior Court (Federal Insurance Company)*, 220 Cal.App.3d 1592, 1597–1600, 270 Cal.Rptr. 222 (1990) (focusing primarily on legislative intent).

■■■■ Any mode of analysis that elevates a "fundamental purposes" inquiry above a "legislative intent" inquiry only invites unwarranted judicial lawmaking. A free flowing "fundamental purposes" analysis allows courts to override the decision of the legislature *not* to explicitly place a private right of action in a remedial statute, simply because the *court* believes the existence of a private right of action might comport with the general goals of the statute. As stated by Justice Powell in his extremely influential *Cannon* dissent, this type of analysis improperly "deflect[s] inquiry away from the intent of [the legislature], and ... permit[s] a court instead to substitute its own views as to the desirability of private enforcement." *Cannon*, 441 U.S. at 740, 99 S.Ct. at 1980 (Powell, J., dissenting). As stated by Justice Powell, such an approach

... allows the Judicial Branch to assume policymaking authority vested by the Constitution in the Legislative Branch. It also invites [the legislature] to avoid resolution of the often controversial question whether a new regulatory statute should be enforced through private litigation. Rather than confronting the hard political choices

---

**24.** Indeed, in *American Int'l Group, Inc. v. Superior Court*, 234 Cal.App.3d 749, 765, 285 Cal. Rptr. 765 (1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1944, 118 L.Ed.2d 549 (1992), the California Court of Appeal cited *Moradi–Shalal* as authority for the proposition that Cal.Ins.Code § 790.03(a) does not provide a private right of action. Although only dicta, this statement directly contradicts the district court's ruling in *Kentucky. See Kentucky*, 814 F.Supp. at 838 n. 2 (recognizing the conflict with *American Int'l*). The court in *American Int'l* also focused much of its discussion on the existence of a comprehensive administrative enforcement scheme as evidence of legislative intent. *See American Int'l*, 234 Cal.App.3d at 764–66, 285 Cal.Rptr. 765. The district court's *Kentucky* decision is also distinguishable on the ground that the rights of action implied were ones that would redress knowing misrepresentations—akin to a common law fraud action. By contrast, the statutes at issue in this case (prohibition of industrial homework in the garment industry and registration requirements) are more akin to criminal or administrative statutes, not traditional common law rights.

involved, [the legislature] is encouraged to shirk its constitutional obligation and leave the issue to the courts to decide. When this happens, the legislative process with its public scrutiny and participation has been bypassed[.]

*Cannon,* 441 U.S. at 743, 99 S.Ct. at 1981–82 (Powell, J., dissenting). Ultimately, because the choice of whether a statute contains a private right of action is essentially a *legislative* one, legislative intent must be the most important factor for a court in determining whether to imply such a right. Indeed, given the basic principles of separation of powers, legislative intent must be the *dispositive* factor.[25]

In construing the provisions of the Industrial Homeworker Act, the Court must first look to the language of the statute itself. *See Gikas v. Zolin,* 6 Cal.4th 841, 854, 25 Cal.Rptr.2d 500, 863 P.2d 745 (1993) (in interpreting a statute, a court must "first turn to the words themselves"). Section 2666 clearly states that "[t]he Division of Labor Standards Enforcement [DLSE] shall enforce the provisions" of the Act. The statute is silent on any private right of action. It is a generally recognized canon of statutory construction that "[t]he express inclusion of one class of actions implies the exclusion of others[.]" *David A. v. Superior Court (Jane D.),* 20 Cal.App.4th 281, 287, 24 Cal.Rptr.2d 537 (1993). Under this principle, the fact that the legislature expressly included a right of action on the part of the DLSE implies that the legislature intended to *exclude* a private right of action.

Further, as with the insurance statutes at issue in *Moradi–Shalal,* the Industrial Homework Act creates a comprehensive administrative enforcement scheme. Under § 2666, the DLSE is empowered to make "rules and regulations as are reasonably necessary to carry out the provisions of this part." Indeed, the California legislature may have excluded a private right of action because it was concerned that private lawsuits would interfere with the DLSE's administrative enforcement strategy.[26]

Therefore, the express language of the statute indicates that no private right of action exists. Moreover, the legislative history is silent on the question of a private right to sue. In fact, much of the discussion focuses on giving greater enforcement powers to the DLSE and the Department of Industrial Relations. *See* Leg.His. IHA at 240 (Letter from Assemblyman Montoya to Governor Brown, dated September 3, 1975) (stating that Assembly Bill 353 (amendments to the IHA) "provides the tools for the Division of Industrial Welfare, and/or other law enforcement agents, to enforce the industrial homework laws[.]").

■ Thus, it appears from the wording and history of the IHA that the Legislature intended to remedy the abuses associated with industrial homework through agency enforcement, *not* private litigation. Therefore, the Court will not imply a private right of action to enforce the Industrial Homework Act.[27] Accordingly, Plaintiffs' fourth cause of action must be dismissed.

**25.** At oral argument, Plaintiffs cited the Court to the recent case of *Tippett v. Terich,* 37 Cal. App.4th 1517, 44 Cal.Rptr.2d 862 (1995). The Court does not find *Tippett* to be on point. *Tippett* does not address the question of when a court will imply a private right of action from a remedial statute. Indeed, *neither Middlesex* nor *Moradi–Shalal* are mentioned in the opinion. Rather, *Tippett* involved the question of whether the administrative remedy provided in Cal.Labor Code § 1775 (penalties for failing to pay the prevailing wage on a public works project) precluded a *common law* action to recover unpaid wages (e.g. breach of contract and restitution). In finding that a common law cause of action could co-exist with Cal.Labor Code § 1775, the *Tippett* court did *not* conclude that a private right of action existed to enforce § 1775 directly.

**26.** Plaintiffs assert that a private right of action would not interfere with the administrative enforcement scheme. Opposition at 33. However, this opinion is questionable. A private right of action would interfere with the DLSE's decisions on which cases it will bring. The DLSE may have a litigation or enforcement strategy, whereby it brings strong cases or test cases first, in order to create a precedent. A private right of action would make it more difficult for the DLSE to control its enforcement agenda.

**27.** Even under the Plaintiffs' proposed *Middlesex* test, the Court would not imply a private right of action. Under *Middlesex* and other pre-*Moradi–Shalal* cases, a court should imply a private right of action where "[t]he legislative provision ... protects [the] class of persons [of which the

### e. Plaintiffs' Fifth Cause of Action Under California Law for Contracting with an Unregistered Contractor

In their fifth cause of action, Plaintiffs assert that Defendants have violated the registration requirements of the Garment Manufacturing Act in two distinct ways. First, Plaintiffs allege that because Defendants Bigin and Tomato have not registered as garment manufacturers with the Division of Labor Standards Enforcement, they have directly violated Cal.Labor Code § 2675. Second, Plaintiffs allege that because the operators of the El Monte facility registered by means of fraud, the Defendants who contracted with the operators are liable for the operators' violation of § 2675. Defendants contend that Plaintiffs' fifth cause of action fails because no private right of action exists to enforce the registration requirements of the Garment Manufacturing Act.

Under California Labor Code § 2675, every person or entity engaged in the business of garment manufacturing must register with the Labor Commissioner of the Division of Labor Standards Enforcement. Any person engaged in the business of garment manufacturing who is not registered is guilty of a misdemeanor, and will be subject to a penalty. *See* Cal.Labor Code §§ 2676 and 2678. Further, "any person engaged in the business of garment manufacturing who contracts with any other person similarly engaged who has not registered with the commissioner ... shall be deemed an employer, and shall be jointly liable with such other person for any violation of Section 2675." Cal.Labor Code § 2677.

The statute does not explicitly provide for a private right of action to enforce the registration provisions. However, the Act states that "[t]he Division of Labor Standards Enforcement shall enforce" sections 2675 through 2682 (the registration requirements). For the reasons discussed in the context of the Industrial Homeworker Act, the fact that the legislature expressly stated that the DLSE "shall enforce" the registration requirements implies that the legislature intended to *exclude* a right of action for private litigants. *See David A.,* 20 Cal.App.4th at 287, 24 Cal.Rptr.2d 537 ("[t]he express inclusion of one class of actions implies the exclusion of others").

Furthermore, the Garment Manufacturing Act provides for a comprehensive administrative enforcement scheme run by the DLSE. Under § 2672, the Labor Commissioner is empowered to "promulgate all regulations and rules necessary to carry out the provisions" of the Act. *See also* Cal.Regul.Code §§ 13630–654 (regulations concerning garment manufacturers). Further, the Commissioner is empowered to impose penalties for the failure to follow these regulations. § 2672. In addition, the DLSE may impose penalties for registration violations and require the deposit of bond. The Labor Commissioner can also confiscate the garments of a repeated registration requirement violator. As stated in *Moradi–Shalal* and *Arriaga,* the existence of this comprehensive administrative scheme indicates that the Legislature did not intend to create a private right of action to enforce the registration requirements. Moreover, the legislative history is silent as to the creation of a private right of action. Indeed, as with the Industrial Homework Act, the legislative history of the Garment Manufacturing Act focuses on DLSE enforcement; the existence of a private right of action is not specifically mentioned.

 Therefore, the Court finds that the California Legislature did not intend to create a private right of action to enforce the

---

plaintiff belongs]; the civil remedy ... further[s] the legislative purpose; and the civil remedy ... [is] necessary to assure the effectiveness of the provision." *Credit Managers,* 809 F.2d at 624 (citing *Middlesex,* 124 Cal.App.3d at 570–71, 177 Cal.Rptr. 495). In this case, a private right of action will not markedly further the legislative purpose. The Industrial Homework Act provides for the DLSE to enforce the terms of the statute. As discussed above, private litigation might interfere with the DLSE's enforcement strategy. Fur-

thermore, a private right of action is not necessary to assure the effectiveness of the statute. First, the statute empowers the DLSE to enforce the strictures of the statute. Second, to the extent that Plaintiffs have actually been harmed by violations of the IHA, Plaintiffs can redress these violations by way of an action under Cal.Bus. & Prof.Code §§ 17200 *et seq.* (*see, e.g.,* Plaintiffs' seventh cause of action), or one founded upon a negligence theory (*see, e.g.,* Plaintiffs' thirteenth cause of action).

registration provisions of the Garment Manufacturing Act.[28] Accordingly, Plaintiffs' fifth cause of action must be dismissed.[29]

#### f. Plaintiffs' Seventh Cause of Action Under Cal.Bus. & Prof.Code §§ 17200 *et seq.* for Unfair Business Practices

In their seventh cause of action, Plaintiffs assert that Defendants have committed unfair business practices in violation of Cal.Bus. & Prof.Code §§ 17200 *et seq.* The "unfair" practices include violations of the FLSA, violations of the California Labor Code, and violations of various regulations.

▆▆▆ Under Cal.Bus. & Prof.Code § 17200, "[u]nfair competition is defined to include 'unlawful, unfair, or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." *People v. McKale,* 25 Cal.3d 626, 631–32, 159 Cal.Rptr. 811, 602 P.2d 731 (1979). It is broadly defined to include "anything that can properly be called a business practice and that at the same time is forbidden by law." *McKale,* 25 Cal.3d at 632, 159 Cal.Rptr. 811, 602 P.2d 731 (quoting *Barquis v. Merchants Collection Assn.,* 7 Cal.3d 94, 113, 101 Cal.Rptr. 745, 496 P.2d 817 (1972)); *see also Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 210–11, 197 Cal.Rptr. 783, 673 P.2d 660 (1983) ("any unlawful business practice ... may be redressed by a private action charging unfair competition in violation of Business and Professions Code sections 17200 and 17203").

▆▆▆ Clearly, Plaintiffs' Complaint sufficiently alleges that Defendants have engaged in unfair business practices, including violations of the federal and state labor laws.[30] Thus, Plaintiffs have stated a claim for unfair business practices. Accordingly, Defendants' motion to dismiss Plaintiffs' seventh cause of action is denied.

#### g. Plaintiffs' Eighth Cause of Action Under Federal and State Law for Collection of Wages Unlawfully Deducted from Minimum Wages for Transportation, Board, Outstanding Debt, and Other Expenses Without Consent

In their eighth cause of action, Plaintiffs assert that Defendants unlawfully deducted from their minimum wages payments for transportation, board, outstanding debt, and "other facilities[.]" Under 29 C.F.R. § 531.30, "[t]he reasonable cost of board, lodging, or other facilities may be considered as part of the wage paid an employee only where customarily 'furnished' to the employee. Not only must the employee receive the benefits of the facility for which he is charged, but it is essential that his acceptance of the facility be voluntary and uncoerced." Similarly, California Labor Code § 450 states that "[n]o employer, or agent or officer thereof, or other person, shall compel or coerce any employee, or applicant for employment, to patronize his employer, or any other person, in the purchase of any thing of value."

▆▆▆ Because the Court finds that Plaintiffs' Complaint sufficiently pleads an em-

---

**28.** Even under the arguably more permissive *Middlesex* test, the Court finds that, for the same reasons discussed in the context of the Industrial Homework Act, a private right of action would not further the legislative purpose and is not necessary to assure the effectiveness of the registration provisions.

**29.** Plaintiffs also appear to argue that because § 2675 mentions the minimum wage and overtime provisions of the California Labor Code (§§ 1197 and 1198), Plaintiffs have a right of action under the Garment Manufacturing Act. The Court disagrees. Plaintiffs have an *independent* right to enforce the minimum wage and overtime provisions through Cal.Labor Code § 1194. However, this does not mean that Plaintiffs have a right to enforce the registration

provisions of the Garment Manufacturing Act. This is a task that the Legislature has left to the Department of Labor Standards Enforcement.

**30.** This is especially true considering the Court's conclusion that Plaintiffs have sufficiently pled an employment relationship between the Defendants and the Plaintiffs. Additionally, in light of 29 U.S.C. § 218(a) (stating that "[n]o provision of [the FLSA] shall excuse noncompliance with any ... State law"), the FLSA does not preempt Plaintiffs' claim under Cal.Bus. & Prof.Code § 17200. *See Pacific Merchant Shipping Ass'n v. Aubry,* 918 F.2d 1409 (9th Cir.1990), *cert. denied,* 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992) (FLSA does not broadly preempt state wage laws that are *more* protective than the FLSA).

ployment relationship between Defendants and Plaintiffs, and because the Complaint clearly states that the wage deductions were involuntary, Plaintiffs have sufficiently pled that their wages were deducted in violation of 29 C.F.R. § 531.30 and Cal.Labor Code § 450. Plaintiffs may sue for these allegedly wrongfully withheld wages under 29 U.S.C. § 216(b) (unpaid minimum wages), Cal.Labor Code § 1194 (unpaid minimum wages), and basic restitution principles. Accordingly, Defendants' motion to dismiss Plaintiffs' eighth claim for relief must be denied.

### h. Plaintiffs' Thirteenth Cause of Action for Negligence *Per Se*

In their thirteenth cause of action, Plaintiffs assert that Defendants were negligent *per se* by violating the provisions of the Industrial Homework Act and the regulation requirements of the Garment Manufacturing Act. Plaintiffs allege that this negligent conduct caused them extreme mental suffering, humiliation, anguish, emotional distress, physical injuries, and economic losses.

 Defendants contend that they were not negligent *per se* because the harm that Plaintiffs suffered was not the harm the statute was designed to prevent.[31] The Court disagrees. Obviously, the Industrial Homework Act and the Garment Manufacturing Act were intended to combat abusive working conditions, such as those alleged in Plaintiffs' Complaint. Essentially, the statutes at issue form duties. Defendants have allegedly breached these duties by violating the statutes. This is the classic negligence *per se* allegation.[32] Accordingly, Defendants' motion to dismiss Plaintiffs' thirteenth cause of action is denied.

### i. Plaintiffs' Fourteenth and Fifteenth Causes of Action for Negligent Hiring and Negligent Supervision

 In their fourteenth and fifteenth causes of action, Plaintiffs allege that Defendants negligently hired and supervised the operator defendants because the "manufacturers" "knew, or reasonably should have known that [the operators] were employing workers in violation of the prohibitions on industrial homework and the wage, hour, safety and registration requirements set by law[.]" FAC ¶¶ 117. Plaintiffs further allege that Defendant failed to use due care by failing to supervise, prohibit, control, or regulate the operators.

Plaintiffs have clearly pled these allegations sufficiently, especially in light of Plaintiffs' allegation that Defendants were joint employers of the operators, and that the El Monte facility was an "integral part" of Defendants' business. Accordingly, Defendants' motion to dismiss Plaintiffs' fourteenth and fifteenth causes of action is denied.

### C. Motion to Strike

 Under Federal Rule of Civil Procedure 12(f), the Court "may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993); *see also Sagan,* 874 F.Supp. at 1072 (citing same language). Rule 12(f) motions are generally "disfavored" because they are "often used as delaying tactics, and because of the limited importance of pleadings in federal practice." Schwarzer, et al., *Federal Civil Procedure* § 9:375 (citing *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal. 1991)). Under Rule 12(f), Defendants seek to strike several items from the Complaint. First, Defendants seek to strike the term "Slave Sweatshop" because it is highly prejudicial and irrelevant to Plaintiffs' case. Second, Defendants seek to strike Plaintiffs' prayers for punitive damages, treble damages, and liquidated damages as to the "manufacturers." Finally, Defendants seek to strike paragraphs 26, 27, and 29 of the First

---

**31.** Defendants also assert that they had no employment relationship with Plaintiffs. This argument has been disposed of above.

**32.** Of course, Plaintiffs will ultimately have to prove that the specific violations caused them harm. But this is not a matter properly addressed under Rule 12(b)(6).

Amended Complaint.[33] The Court will address each request in turn.

### 1. "Slave Sweatshop"

■ The Court agrees that the term "Slave Sweatshop" is immaterial, scandalous, highly prejudicial and should be stricken. Even though several of the operators have recently pled guilty to slavery charges, the actual term "Slave Sweatshop" adds nothing to the material allegations in Plaintiffs' First Amended Complaint. Plaintiffs can certainly show that the "operators" subjected the workers to involuntary servitude without using the term "Slave Sweatshop" throughout the Complaint. However, while adding nothing to the substance of Plaintiffs' First Amended Complaint, it is highly prejudicial to Defendants, some of whom are retailers who depend upon consumer goodwill. Because the term "Slave Sweatshop" appears only for inflammatory effect, and because it is immaterial, scandalous, and highly prejudicial, the Court ORDERS that the term "Slave Sweatshop" be stricken from the First Amended Complaint.

### 2. Prayer for Liquidated Damages, Treble Damages, and Punitive Damages

■ In addition to injunctive relief, compensatory damages, unpaid wages, and other damages, Plaintiffs also seek liquidated damages, treble damages, and punitive damages. Defendants assert that these prayers should be stricken because, as a matter of law, Plaintiffs are not entitled to liquidated damages, treble damages, or punitive damages.[34]

**33.** In the original motion, Defendant F–40 sought to strike the allegation that F–40 had not registered as a garment manufacturer with the Labor Commissioner. Because F–40 is no longer a party to this action, the Court will not address this argument.

**34.** Contrary to Plaintiffs' assertion, a motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law. *See Tapley v. Lockwood Green Engineers, Inc.*, 502 F.2d 559, 560 (8th Cir.1974) (per curiam).

**35.** "Liquidated damages" are meant to "constitute[ ] compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Brooklyn Savings*

The Court will address each type of damages separately.

#### a. Liquidated Damages

■ Clearly, Plaintiffs are entitled to liquidated damages [35] if they are able to prevail on their second claim for relief against the "manufacturers." Under 29 U.S.C. § 216(b), "[a]ny employer who violates the provisions of section 206 [minimum wage] or section 207 [overtime] ... shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, *and in an additional amount as liquidated damages.*" In its discretion, the Court may reduce or eliminate liability for liquidated damages. *See* 29 U.S.C. § 260. However, this reduction will only happen "if the *employer* shows to the satisfaction of the court that the act or omission giving rise to [an action for unpaid minimum wages or overtime compensation] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act[.]" § 260 (emphasis added); *see also Martin v. Cooper Electric Supply Co.*, 940 F.2d 896, 907–08 (3d Cir.1991), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992) ("defendant employer bears the 'plain and substantial' burden of proving he is entitled to discretionary relief from the FLSA's *mandatory* liquidated damages provision."). "Absent such a showing, liquidated damages are mandatory." *First Citizens*, 758 F.2d at 403.[36] Therefore, Plaintiffs are clearly enti-

*Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945). They are "compensatory, not punitive in nature" because they "compensate employees for losses they might suffer by reason of not receiving their lawful wages." *E.E.O.C. v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985). Thus, in the general case, a worker can recover not only the actual unpaid minimum wage, but can also recover an equal amount in liquidated damages. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986) ("[d]ouble damages are the norm, single damages the exception").

**36.** Thus, Defendants' assertion that Plaintiffs must plead Defendants' "bad faith" to obtain

tled to liquidated damages under the FLSA.[37] Accordingly, Defendants' motion to strike Plaintiffs' demand for liquidated damages is denied.

### b. Punitive Damages

 Plaintiffs are clearly not entitled to punitive damages under any of their federal causes of action pled against the "manufacturers." However, Plaintiffs may be entitled to punitive damages for some of their state causes of action. Under Cal.Civil Code § 3294, "[i]n an action for breach of an obligation not arising from a contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishment." Because Plaintiffs' claim for punitive damages against the "manufacturers" arises under California law, section 3294 governs *substantively*. However, this Court's "determinations regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure. *Pease & Curren Refining, Inc. v. Spectrolab, Inc.* 744 F.Supp. 945, 948 (C.D.Cal.1990), *abrogated on other grounds*, 984 F.2d 1015 (9th Cir.1993). As has been discussed, a pleading need only "contain ... a short and plain statement of the claim showing that the pleader is entitled to relief, and ... a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). Furthermore, although Cal.Civil Code § 3294 does require "oppression, fraud, or malice" for punitive damages, these allegations "may be averred generally." Fed. R.Civ.P. 9(b); *see also Pease*, 744 F.Supp. at 949.

Plaintiffs do not tie their punitive damages claim against the "manufacturer" defendants to any particular cause of action. In addition, Plaintiffs never explicitly assert that the "manufacturer" Defendants acted with malice, fraud, or oppression. Rather, Plaintiffs assert that the "operator" defendants acted with malice, fraud, or oppression. However, under Cal.Civil Code § 3294(b), an employer will be liable for punitive damages, "based upon acts of an employee of the employer," if "the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded...."

In the First Amended Complaint, Plaintiffs allege that the "manufacturer" Defendants engaged "in a pattern and practice of contracting at unfairly low prices by utilizing garment contractors who are ... chronic violators of labor laws, thus condemning plaintiffs ... to long hours of work without minimum wages and overtime pay as required by law[.]" FAC ¶¶ 26–27. Plaintiffs also allege that the El Monte facility "was an integral part of the process of garment manufacturing of each defendant Manufacturer[.]" FAC ¶ 19. In addition, Plaintiffs allege that the "manufacturer" Defendants "knew or should have known that [the operators] were engaging in ... wrongful conduct ... [such as] employing workers in violation of the prohibitions on industrial homework and the wage, hour, safety and registration requirements set by law[.]" FAC ¶ 117. Plaintiffs also allege that the "manufacturers" hired the operators, even though they "knew or should have known that [the operators] would violate plaintiffs' rights[.]" FAC ¶ 123.

 Essentially, Plaintiffs allege that the "manufacturer" Defendants were the em-

---

liquidated damages is simply an incorrect statement of the law.

**37.** In addition, under Cal.Labor Code § 1194.2(a), "[i]n any action under Section 1194 to recover wages because of the payment of a wage less than the minimum wage ... an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Similar to the FLSA, "if the employer demonstrates to the satisfaction of the court that the act or omission giving rise to the action was in good faith and

that the employer had reasonable grounds for believing that the act or omission was not a violation of any provision of the Labor Code relating to minimum wage ..., the court may, in its discretion, refuse to award liquidated damages or award any amount of liquidated damages[.]" Cal.Labor Code § 1194.2(b). However, unlike the FLSA, the California Labor Code does not authorize the recovery of liquidated damages "for failure to pay overtime compensation." Cal.Labor Code § 1194.2(a).

ployers of the "operators," and that the "operators" were an "integral part" of the "manufacturer" Defendants' business. Plaintiffs also allege that Defendants hired and supervised the "operators," even though they knew of the "operators'" illegal, malicious, fraudulent, and oppressive activity toward Plaintiffs. Under the liberal standards of notice pleading, these allegations clearly satisfy Federal Rules 8 and 9, as well as Cal.Civil Code § 3294(b). Accordingly, Defendants' motion to strike Plaintiffs' prayer for punitive damages is denied.[38]

### c. Treble Damages

Plaintiffs seek treble damages only against the "operator" defendants for violations of the Racketeer Influenced and Corrupt Organization Act ("RICO") (18 U.S.C. §§ 1961 *et seq.*). *See* Prayer for Relief ¶ 8. They do not seek treble damages against the "manufacturer" Defendants. Accordingly, the "manufacturer" Defendants' motion to strike Plaintiffs' prayer for treble damages is denied.

### 3. Paragraphs 26, 27, and 29 of the First Amended Complaint

■ In paragraph 26 of the First Amended Complaint, Plaintiffs allege that the "manufacturer" Defendants "contracted with [the operators] to produce garments at prices too low to permit payment of employees' minimum wages and overtime. Manufacturers utilize the business practice of contracting out garment manufacturing work in part to avoid compliance with labor laws and liability for violation of those laws[.]" Paragraph 27 alleges that the "manufacturer" Defendants "engaged and continue to engage in a pattern and practice of contracting at unfairly low prices by utilizing garment contractors who are not registered and/or who are chronic violators of labor laws, thus condemning plaintiffs and other garment workers to long hours of work without minimum wages and overtime pay[.]" Paragraph 29 alleges that "defendant Manufacturers have concealed and continue to conceal pertinent facts regarding their activities, including their involvement with [the operators]."

Defendants allege that these paragraphs should be stricken because they are immaterial, scandalous, and impertinent. The Court disagrees. These allegations are extremely pertinent to Plaintiffs' claims that Defendants are their employers, that Defendants engaged in unfair business practices, and that Defendants were negligent. In addition, the paragraphs are pertinent to Plaintiffs' prayer for punitive damages. Accordingly, Defendants' motion to strike these paragraphs must be denied.

### D. Mervyn's' Motion for Summary Judgment

Lastly, Defendant Mervyn's moves for summary judgment on the ground that Mervyn's cannot be liable because it was not Plaintiffs' employer. Mervyn's further asserts that it never contracted with any of the "operators." Plaintiffs assert that Defendants' motion should be denied as premature, or alternatively, should be continued pursuant to Federal Rule 56(f).

■ The Court agrees. As a general rule, "[a] party must have an adequate opportunity to develop his claims through discovery before summary judgment is appropriate." *Redmond v. Burlington Northern Railroad Co. Pension Plan*, 821 F.2d 461, 469 (8th Cir.1987); *see also International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir.1990) ("where the facts are in the possession of the moving

---

**38.** "With respect to a corporate employer, the advance knowledge and conscious disregard . . . must be on the part of an officer, director, or managing agent of the corporation." § 3294(b). Defendants assert that Plaintiffs have not sufficiently pled that the "manufacturer" Defendants' officers, directors, or managing agents hired the "operators" with advance knowledge of the wrongdoing and conscious disregard for the Plaintiffs' rights. The Court disagrees. In alleging that Defendants had a policy or practice of contracting with garment contractors that violate the rights of workers, Plaintiffs imply that the policy or practice was devised or carried out by high officials in the corporations. This reasonable inference satisfies notice pleading. Of course, under § 3294(b), Plaintiffs will ultimately have to prove that the advance knowledge and conscious disregard was "on the part of an officer, director, or managing agent of the corporation[s]." § 3294(b).

party, a continuance ... should be granted almost as a matter of course."). According to the parties, *no* discovery has yet taken place in this case. Indeed, in light of the parallel criminal action, discovery was *stayed* by the Court from January 8, 1996 through February 13, 1996. Further, many of the "operator" defendants, who have recently pled guilty in the criminal case, will retain their Fifth Amendment privilege against self-incrimination until after sentencing. Therefore, Plaintiffs will not be able to perform meaningful discovery for some time.

■ Thus, Defendant Mervyn's motion is entirely premature. Accordingly, the motion for summary judgment is denied without prejudice to a future motion.

### IV. Conclusion

For all of these reasons, the Court hereby ORDERS as follows:

1.) Defendants' motion for a more definite statement is DENIED;

2.) Defendants' motions to dismiss are GRANTED in part and DENIED in part. Plaintiffs' fourth and fifth causes of action are hereby DISMISSED with prejudice;[39]

3.) Defendants' motion to strike is GRANTED in part and DENIED in part. The Court ORDERS the term "Slave Sweat-shop" stricken from the First Amended Complaint;

4.) Defendant Mervyn's motion for summary judgment is DENIED without prejudice to a future motion.

**SO ORDERED.**

---

**39.** Because no private right of action exists under 29 U.S.C. § 215(a)(5) or Cal.Labor Code §§ 2650 *et seq.* and 2670 *et seq.*, any amendment would be futile.